### IVINSON *v.* HUTTON.

A. and B., having arranged the terms on which the partnership between them should be dissolved, stipulated that their clerk should examine their books, ascertain the amount which each had put into the firm and each had drawn out, and report the same as the basis of their agreed settlement, and that if any error was made, it should be corrected when discovered. The clerk made the examination, and reported that the sum of $47,039.54 was due from B. to A.   Thereupon, supposing the report to be correct, each, made, executed, and delivered to the other all the papers necessary to perfect and complete the terms and conditions of the dissolution· of the partnership.   On the same day, the clerk discovered that he had made an error of $4,036.12 against A.   B. having refused to correct it, A. filed his bill praying for an account, the correction, amendment, and cancellation of the papers so executed by them, and for a decree for the payment of the $4,036.12 due him.   The bill was dismissed, on the ground that A.'s remedy was at law. *Held*, that the decree was erroneous.

APPEAL from the Supreme Court of the Territory of Wyoming.

The facts are stated in the opinion of the court.

*Mr. Jeremiah M. Wilson* for the appellant.
*Mr. W. W. Corlett, contra.*

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Except in an action of account, which is almost obsolete, it is a general rule that between partners, whether they are so in general or for a particular transaction only, no account can be taken at law.   *Worrall* v. *Grayson,* 1 Mee. & W. 168 ; 1 Collyer, Partnership (6th ed.), 339.

Owing to the ability of courts of equity not only to investi-

gate complicated accounts, but also to compel the specific performance of agreements, and to reform or rescind the same, in case of fraud or mistake, and to restrain breaches of duty for the future, it is to them rather than courts of law that partners usually have recourse for the settlement of controversies among themselves. ·2 Lindley, Partnership (3d ed.), ·933.

Sufficient appears to show that the parties to the present controversy on the 6th of September, 1872, entered into a copartnership for the purpose of raising cattle in the county where they resided; that their business transactions and accounts were large; that the complainant put into the copartnership the sum of $51,075.66, and that he had drawn out from the same the sum of $7,257; that on the 11th of April, 1874, the partnership was dissolved by mutual consent, upon the terms following: 1. That the respondent should pay the complainant $5,000 and all the money the complainant had put into the partnership, less the amount he had drawn out, and that the respondent should pay or secure all debts and liabilities due and owing by the firm. 2. That the complainant should release, assign, and convey to the respondent all the interest of every description which he, the retiring partner, had in the partnership property when the partnership was dissolved.

Neither party knew what amount the complainant had put into the firm nor what amount he had drawn out, but they mutually agreed that their clerk should examine the partnership books, ascertain the amount, and report the same as the basis of their agreed settlement, and that if any error was made, that it should be corrected when discovered.

Pursuant to that arrangement, the clerk examined the books, and reported to the parties that the sum shown to be due from the respondent to the complainant was $47,039.54. By the record it also appears that both parties supposed that the sum reported was correct, and that they made, executed, and delivered each to the other all the papers necessary to perfect and complete the terms and conditions of the dissolution of the copartnership; that in the course of the same day the clerk discovered that he had made an error of $4,036.12 against the complainant in making the computation.

Prompt notice of the error was given to the parties; and the complainant alleged in the original bill of complaint that the respondent then and there promised and agreed to re-examine the accounts, and that he would rectify the error or errors, if any were found to have been made, which he subsequently refused to do. Service was made, and the respondent appeared and demurred to the bill of complaint.

Leave of the court having been first obtained, the complainant amended the bill of complaint by striking out the words containing the promise to rectify the error or errors, and the respondent demurred to the amended bill of complaint. Responsive to the same demurrer, the complainant filed a motion to strike it from the files as irregular; but the court denied the motion, overruled the demurrer, and directed the respondent to file an answer to the amended bill of complaint.

These preliminary matters being settled, the respondent filed an answer denying the jurisdiction of the court, and setting up several defences. Hearing was had upon the bill of complaint and answer, and the court sent the cause to a special master to take the proofs and report the same to the court. Due report was accordingly made by the master, with his findings of fact, which substantially support all the material allegations of the amended bill of complaint. Exceptions to the report of the master were filed by the respondent, all of which were overruled by the court.

Before making that order, the parties were again heard; and the court confirmed the report of the master, and entered a decree that all the papers, instruments, agreements, notes of hand, and mortgages made and executed by the parties in effecting the dissolution of their copartnership be reformed and corrected in accordance with the findings of the master. From which decree the respondent appealed to the territorial Supreme Court, where the parties having been again heard, the appellate court reversed the decree of the court of original jurisdiction and dismissed the bill of complaint, holding that the complainant had a plain, adequate, and complete remedy at law; and from that decree the complainant appealed to this court.

Since the appeal was entered here, the complainant assigns for error that the court erred in holding that the case was not

one of equitable jurisdiction; that the complainant's remedy was at law and not in equity, and in dismissing the bill of complaint on that ground.

Courts of equity have jurisdiction of controversies arising out of transactions evidenced by written instruments which are lost; or if through mistake or accident the instrument has been incorrectly framed, or if the transaction is vitiated by illegality or fraud, or if the instrument was executed in ignorance or mistake of facts material to its operation, the error may be corrected or the erroneous transaction may be rescinded.

Equities of the kind, whether it be for the re-execution, reform, or rescission of the instrument, like the equity for specific performance of a contract, are incapable of enforcement at common law, and therefore necessarily fall within the peculiar province of the courts invested with equitable jurisdiction.

Power to reform written contracts for fraud or mistake is everywhere conceded to courts of equity, and it is equally clear that it is a power which cannot be exercised by common-law courts. *Hearne* v. *Marine Insurance Company*, 20 Wall. 490.

Relief in such a case can only be granted in a court of equity; and Judge Story says, if the mistake is made out of proofs entirely satisfactory, equity will reform the contract so as to make it conform to the precise intent of the parties; but if the proofs are doubtful and unsatisfactory, and the mistake is not made entirely plain, equity will withhold relief, upon the ground that the written paper ought to be treated as a full and correct expression of the intent, until the contrary is established beyond reasonable controversy. 1 Story, Eq. Jur. (9th ed.), sect. 152; *Gillespie* v. *Moon*, 2 Johns. (N. Y.) Ch. 585; *Rhode Island* v. *Massachusetts*, 15 Pet. 271; *Daniel* v. *Mitchell*, 1 Story, 172.

Authorities which support that proposition are quite too numerous for citation, and the rule is equally well established that parol proof is admissible to prove the alleged accident or mistake which is set up as the ground of relief. *Hunt* v. *Rousmanier*, 8 Wheat. 174; 1 Story, Eq. Jur. (9th ed.), sect. 156; 3 Greenl. Evid. (8th ed.), sect. 360; Adams, Eq. (6th ed.) 171.

Support to the latter proposition is also found in all the

standard writers upon the law of evidence. Courts of equity, says Taylor, will also admit parol evidence to contradict or vary a writing where, by some mistake in fact, it speaks a different language from what the parties intended, and where, consequently, it would be unconscionable or unjust to enforce it against either party, according to its terms. 2 Taylor, Evid. (6th ed.) 1041.

Viewed in the light of these suggestions, it is evident that the ruling of the court below, that the complainant had a plain, adequate, and complete remedy at law, was erroneous and utterly subversive of the complainant's rights, as it is clear that the common-law courts could not give him adequate relief. *Hipp et al.* v. *Babin et al.*, 19 How. 274; *Insurance Company* v. *Bailey*, 13 Wall. 621.

Reported cases of the highest authority decide that courts of equity possess the power to correct mistakes in written instruments, even to the extent of changing the most material stipulations they contain' and which are the subjects of special agreement; but the settled rule of practice is that the power should always be exercised with great caution, and only in cases where the proof is entirely satisfactory. *Finley* v. *Lynn*, 6 Cranch, 249; *Oliver* v. *Insurance Company*, 2 Curt. 295.

Where an instrument is drawn and executed which professes or is intended to carry a prior agreement into execution, whether in writing or by parol; which by mistake violates or fails to fulfil the manifest intention of the parties, equity, if the proof is clear, will correct the mistakes, so as to produce a conformity of the written instrument to the antecedent agreement of the parties. *Hunt* v. *Rousmanier*, 8 Wheat. 211; s. c. 1 Pet. 13.

Proof of the most unquestionable character is exhibited in the record that the understanding of the parties was that the respondent was to pay to the complainant the whole amount the latter paid into the firm, less the sums he had drawn out, and that the clerk designated by the parties to examine the books and compute the amount made the mistake alleged in the bill of complaint. Clear proof is also exhibited that corresponding mistakes were made in the writings executed between the parties to effect the agreed dissolution of the copartnership.

Under such circumstances, equity, if the proof is clear, will reform the agreements and correct the mistakes, as appears by many standard authorities in addition to those to which reference has already been made. *Henkle* v. *Insurance Company*, 1 Ves. 314; *Moteux* v. *Insurance Company*, 1 Atk. 545; *Collett* v. *Morrison*, 12 Eng. L. & Eq. 171; *Andrews* v. *Essex Co.*, 3 Mason, 10.

Controversies of the kind often arise in respect to policies of insurance; and the rule is, when once the contract is agreed to, the underwriters are bound to insert it in the policy, and if they omit to do it, the insured have a right to insist upon a perfect conformity to the original agreement. *Canedy* v. *Morey*, 13 Gray (Mass.), 377; *Wake* v. *Harrow*, 1 Hurlst. & Colt. 202.

Concede that, and still it is suggested by the respondent that errors in matters of practice were committed by the court of original jurisdiction. Suppose that is so, still it cannot afford any justification for the appellate court in dismissing the bill of complaint, as the errors, if any, were amendable, and might have been corrected if the appellate court had reversed the decree of the court of original jurisdiction and remanded the cause for further proceedings. Instead of that, the appellate court dismissed the bill of complaint without qualification, the effect of which, if not corrected, will be that the complainant will be barred of relief.

Irregularity in the proceedings may frequently justify a reversal of the decree and a remanding of the case, but it will seldom or never present just cause for dismissing the bill of complaint. By a reversal in such a case, the right of the complainant is not barred, and when the cause goes down, he may, if he can, correct the errors and preserve his rights. Even if the alleged errors of practice were material, the decree could not be justified, as, if not reversed, it would for ever bar the right of the complainant; but upon a careful examination of the supposed errors, it is clear that they presented no just obstacle to the rightful determination of the controversy. Nor is it correct to suppose that the alleged errors of practice constituted the cause of dismissal in this case. On the contrary, the opinion of the court shows that the bill was dismissed solely

upon the ground that the complainant had a plain, adequate, and complete remedy at law, which is a manifest error, as fully shown by the authorities previously cited.

The decree will be reversed, and the cause remanded with directions to enter a decree affirming the decree of the court of original jurisdiction ; and it is

*So ordered.*