# CASES

## ARGUED AND DETERMINED

#### IN THE

# United States Circuit and District Courts.

---

### FERGUSON and others *v.* DENT and others.

*(Circuit Court, W. D. Tennessee.* September 30, 1886.)

1. RECEIVER—EQUITY—APPEAL—SUPERSEDEAS BOND—CUSTODY OF RECEIVER PENDING THE APPEAL.

   The omission from an appeal-bond of the statutory stipulation as to damages required to effect a *supersedeas* does not necessarily entitle the party to whom the property is adjudged to a discharge of the receiver, and possession of the property, pending the appeal. The subsequent custody is a matter which the court will regulate, upon the equitable circumstances of each case, independently of the fact whether there has been a statutory *supersedeas* of the final decree or not.

2. SAME—MISTAKE—CORRECTION OF DEFECTIVE BOND.

   Whether the circuit court has authority, after appeal, to allow an amendment to a *supersedeas* bond, *quære.* But, in the exercise of its jurisdiction to determine whether it will grant an application to execute the decree because of a defective bond which cannot operate as a *supersedeas*, it may withhold execution until the supreme court can act in the matter; and should do so, if there be equitable considerations of mistake which would induce a court of equity to reform the bond on a bill for that purpose. On such an application the court is not compelled to act solely upon the one fact of a defective bond. It will inquire at large, and exercise its equitable powers of relief, as in other cases, upon all the facts.[1]

3. SAME—DISCHARGE OF RECEIVER.

   The court will not sanction the dispossession of its receiver by a writ issued by the clerk upon the discovery of a defect in the *supersedeas* bond, although the final decree, if not *superseded*, might authorize it. The proper practice is to apply to the court to execute the decree.

*(Syllabus by the Court.)*

In Equity. Application to discharge receiver.

The opinion of the court, and the decree entered upon this application, which is appended as useful to show what was actually done in pursuance of the opinion, sufficiently state the facts. At the last term of the supreme court the plaintiffs applied for a *mandamus* to compel the circuit court to vacate the order recalling the writ issued by the clerk, or to otherwise execute the decree by discharging the re-

[1]See note at end of case.

v.29F.no.1—1

ceiver and surrendering the possession to them. The *mandamus* was refused, but without any opinion or other information as to the grounds of the refusal. The penalty of the bond as actually executed was as follows:

"Whereas, the above-named George G. Dent and others have prosecuted a writ of appeal to the supreme court of the United States to reverse the judgment rendered in the above-entitled action by the circuit court of the United States for the Western district of Tennessee, now, therefore, the consideration of this obligation is such that if the above-named George G. Dent and others shall prosecute said writ of appeal to effect, and answer all costs; or if they shall fail to make good their plea, then this obligation shall be void; otherwise to remain in full force and virtue."

This bond, as executed, was copied by the deputy-clerk from a form filled up by one of the lawyers in the case, and it does not distinctly appear whether the deputy-clerk or the lawyer left out the words "and damages," for which a blank was left in the printed form in use in the clerk's office, to be inserted when desired by parties to make a *supersedeas* bond. On discovery of the omission, and on application to him, the clerk issued the writ of possession ordered by the final decree, and the marshal put the plaintiffs in possession. This action was revoked by the district judge, and the receiver reinstated. The plaintiffs, having been refused a *mandamus* by the supreme court, moved in the circuit court (1) to now discharge the receiver, and surrender possession to them in accordance with the final decree; and (2) to vacate the order of revocation. The defendants moved to be allowed to amend the bond or to file a new one.

*T. B. Edgington,* for plaintiffs.

*Poston & Poston* and *L. W. Finlay,* for defendants.

HAMMOND, J. The affidavits here show, what is well known to the court, that it was intended by the defendants and the court that this bond should be a *supersedeas* bond. The penalty was sufficiently large to cover any damages likely to come within the liability pending the appeal. *Kountze* v. *Omaha Hotel Co.,* 107 U. S. 378; S. C. 2 Sup. Ct. Rep. 911; *Roberts* v. *Cooper,* 19 How. 373.

I cannot think, as suggested by the plaintiffs' counsel, that the words necessary to make it in form a *supersedeas* bond were designedly omitted in order to evade that responsibility. The surety understood the full extent of it, as well as the defendants; for when he came to sign the bond he inquired of me, and it was fully explained to him, as it had been to Mr. Frazer when he drew the bond. I must protest, good-naturedly of course, against the inaccuracies of Mr. Frazer's affidavit. He is mistaken when he states that I undertook to see that "the appeal was perfected as affiant desired." I read to him the statute, the twenty-ninth rule of the supreme court, and certain passages in Phillips' Practice, and warned him of the strictness of the practice. I subsequently saw in the clerk's office the soiled form of bond mentioned in the affidavits as in his hand-writ-

ing, but did not inspect it, and do not know whether it contained the words "and damages" or not; but he left my chambers to write a bond which would be sure to have those words in it. He is altogether mistaken when he says in his affidavit that, "under the direction of the court, the clerk made out the bond as filed." I gave no directions about it, and had nothing to do with it, except to justify the surety and approve it, which I did, as I always do, without the least scrutiny of the bond; for it is the business of counsel to see that it is in the form they wish it, and it is a matter about which I should not and do not meddle at all.

But, in my own view, it is wholly immaterial how this mistake in the bond occurred. It is not in form a *supersedeas* bond. Yet it operated *de facto* as a *supersedeas* bond for seven months from September 29, 1885, the date it was filed, until April 23, 1886, when counsel for the plaintiffs first discovered the omission, and applied to the clerk for a writ of possession to oust the receiver. I was then absent at Cleveland, Ohio, holding court, and, upon my return, *sua sponte* revoked the action of the clerk, and restored the possession to the receiver, because it was not, in my judgment, a case for action by the clerk, and the receiver could not or properly should not be dispossessed except upon the order of the court, and possibly not without an application to the supreme court itself.

It is true that the opinion in the case, and the decree following it, directs that "the receiver deliver possession to the plaintiffs, for which purpose a writ of possession should issue to place them in the quiet possession of the property, freed from all tenants of the receiver and their effects," (*Ferguson* v. *Dent*, 24 Fed. Rep. 426;) but this was merely a mode of declaring the right of the plaintiff to the property, and was not intended, at least, to direct that the receiver be dispossessed without a further order of the court to that end. Strictly speaking, there is no such thing in our equity practice as a *writ of possession*, and certainly none is ever needed to dispossess a receiver of the court. If a receiver should refuse to obey an order of the court, possibly a *writ of assistance* might be issued by the clerk, under equity rule 9; but even that is doubtful, for it seems to provide rather for that writ as against the parties to the suit without an application to the court which otherwise would have to be made. 2 Daniell, Ch. Pr. (1st Ed.) 724; 1 Daniell, Ch. Pr. 643. We have, in Tennessee chancery practice, a writ of possession in analogy to that writ in ejectment at law; but that, of course, has no application here, though it was used in *Wallen* v. *Williams*, 7 Cranch, 278. At all events, this decree meant no more than would have been implied if it had not contained the directions as to a writ of possession against the receiver. Mr. Daniell says:

"The appointment of a receiver, made previous to a decree, will be superseded by it, unless the receiver is expressly continued. A receiver, however, is never discharged by decree, but the application for his discharge must be

made by petition," etc. 3 Daniell, Ch. Pr. (1st. Ed.) 408; 2 Daniell, Ch. Pr. (5th Ed.) 1765.

Naturally enough this final decree was treated as a direct order of the court to dispossess the receiver; and, strictly, there should have been an order continuing his possession after the decree, and pending the appeal; so while, under the circumstances, neither the plaintiffs nor the clerk would be guilty of willful contempt in dispossessing him, yet, since he had been, without any special order, continuously in possession since the appeal, and repeated orders had been given for his direction in the management of the property, it seemed to me that, whether the bond justified that continued possession or not, the application to the court, which is now made, should have been then made, before turning him out, notwithstanding the command of the final decree. Just as if the final decree, or one subsequently made, had contained specific directions for continuing the receiver pending the appeal, the clerk would not have issued the writ; so that, possession having been continued, in fact, he should not have issued it without a further order to that effect. For these reasons the motion to vacate the order of revocation is denied. I cannot sanction any interference with the receiver's possession without the special order of the court whose receiver he is; and, under the circumstances stated, the final decree cannot be treated as such sanction, whether the bond be a *supersedeas* bond or not.

It does not follow, even at law, that the court will either issue an execution, or refuse to quash one issued by the clerk, simply because the bail in error is fatally defective. The text writers, abridgments, and cases show that it is very much a matter of sound discretion in the court; and one of the chief influences in controlling that discretion is the desirability of preserving the existing *status* until the appellate court can exercise its undoubted power of determining whether there be in fact a fatal defect or not. Undoubtedly, the plaintiff, the clerk, and the sheriff—indeed, all the officials concerned—may be called on to determine, each for himself, just as the clerk did here, whether the judgment or decree has been superseded or not by the writ of error or appeal; and each for himself must act at his peril, for there is no tangible writ of *supersedeas* to guide them. It is done by implication of law from the existing facts, and the matter to be determined is whether there can be any action towards executing the judgment or decree,—whether there be any *supersedeas*. Still, the court can always revise that action of the officials, and the fallacy is in supposing that the matter is to be always determined by either the officials or the court solely and exactly upon the face of the bail-piece, be it recognizance or bond. Often the court below will not proceed, notwithstanding the defects; and just as often it will refuse to interfere where execution has in fact issued under equivocal circumstances, although there may be in fact no defect, and in a law a *supersedeas*,—leaving the party to some other remedy, such as an in-

dependent action at law for the trespass or injury done. I need not say that the ultimate purpose of all concerned is to give the plaintiffs the benefit of their recovery, pending the appeal, if they be entitled to it, or the defendants the privilege of their *supersedeas,* if there be one; but it is a mistake to suppose that whether we shall, or how we shall, execute the final decree in this case, for example, depends altogether upon the fact of the omission discovered in this bond. Here this property was taken from the defendants pending the controversy over its ownership, and, without any bond at all from plaintiffs, except for costs, put into the hands of a receiver, so that the defendants could not waste it, or destroy it, or sell it and embarrass its recovery by plaintiffs. Now, pending the appeal, it would seem that justice requires that it should equally remain protected, if there be necessity for it, from the waste or destruction of plaintiffs, or its embarrassment by their sale, until the plaintiff's right to it has been confirmed. It was not thought safe to plaintiffs to leave it with defendants pending litigation in this court, because they were insolvent, etc.; and, without going into details, if these non-resident plaintiffs be not also insolvent, as to which there is no proof, they are not shown to be solvent, and it may be doubtful, at the least, whether they could respond to any claim of defendants arising out of their possession during the continuance of the litigation pending the appeal if our decree be reversed; and, if they could do that, defendants would have to go to a distant state to seek a recovery. Again, they might sell the property to strangers, and embarrass its recovery by the defendants, if it be theirs. The purchasers would take *pendente lite,* no doubt, but the embarrassment would still exist. So we might have prevented that by a special injunction at the hearing, but it is too late now, and a receiver would be better for all concerned, any way, as well after as before appeal.

When we took it from the defendants, in contemplation of law their right of possession remained, although the property was in the hands of a receiver; for which additional reason this court should, if it has the power, be careful to protect defendant's possession which is in its keeping. If there were no statute, and the court as free to act as it always was in England, it would, under the circumstances of this case, stay proceedings pending the appeal; and I doubt if a case can be found surrendering a possession, so taken, to the triumphant plaintiff, if the defendant appeals, and the court be unrestricted by some limitation on its powers in that regard. Has our statute abrogated all such equitable considerations, and required us here, without inquiry into other facts, to surrender possession because of this omission in the bond? I think not. Not even the precise language of the statute requires such a ruling. Rev. St. 1000, 1007, 1012. The appellants cannot have the statutory *supersedeas* without doing certain things, among which is an undertaking by surety to pay *damages,* as well as costs; but, as Mr. Justice STORY says in

*Martin* v. *Hunter's Lessee,* 1 Wheat. 374, we must not resort to "hypercritical severity in examining the distinct force of words," etc.  Therefore, when we construe this language by the light of the law of *supersedeas,* as it applies to courts of chancery especially, we are forced to acknowledge that those courts have not been shorn of their ordinary power to stay proceedings pending an appeal, outside of and beyond this statute.  I do not break down the act of congress, nor claim a power unrestricted by it, nor forget the abundant rulings on it, from a critical examination of which I have just emerged.  But, not to be misunderstood, and confining the rulings to the facts before us here, I affirm that when a court of equity appoints a receiver, and by the final decree adjudges the property to belong to one of the parties, it may, pending the appeal, continue the receiver or not, according to circumstances; and this statute does not affect that power except so far as it furnishes an analogy as to the terms it may impose upon the parties.  The appellate court may, beyond question, control the exercise of the power, but still it exists, and, in my judgment, the most important consideration to govern the discretion is that which demands that we save that control of the appellate court which it should always have over the *res* to make its jurisdiction effectual.  Just as before the appeal it was within the power of this court, why should not we do all we ought, to transfer the control to the appellate court? If it be equitable to commence the judicial custody, generally it would be equitable to continue it.

If we had not appointed a receiver, this property would have been in the hands of defendants at the final decree.  Possession would have been decreed to plaintiffs, and could have been enforced under equity rule 9, unless they had perfected the statutory *supersedeas.* But the plaintiffs were not content with this, but invoked the extraordinary power of this court to appoint a receiver,—extraordinary in its commencement and in its continuance before and since the appeal; and, being extraordinary, it is governed by its own rules as well in relation to a stay of proceedings pending an appeal as everything else.  We suspend the ordinary laws of procedure, and oust tenants without ejectment.  We allow no man to eject the receiver, or to sue him, or to tear down the buildings, (which power has been invoked in this case as against the city police,) without our consent. Why, then, does not this extraordinary procedure of appointing a receiver likewise stretch itself beyond the ordinary law of statutory *supersedeas,* and present some element of its own in that regard?  It does, I think.

The result of it is that the most that can be technically claimed by the plaintiffs because of this omission in the bond is that the decree declaring them entitled to the right of property in this real estate has not been suspended, as it was intended to be, *per force of the statute and the bond;* and, as against the defendants, they would be entitled to a writ of assistance to acquire that possession which ordi-

narily belongs to the right of property; but they have themselves defeated that effect by taking the possession of the property from defendants, and placing it with this court.   On applying here for possession other procedure comes into play, and the fact appears that there has been an appeal, and the question is, shall the court surrender *its* possession because there has been no bond under the statute?   Generally, it ought to do so; because, but for any statutory command to stay its further action on the giving of a proper bond, generally it would do so.   3 Daniell, Ch. Pr. (1st Ed.) 105–110.   I mean that whatever restrictions there may be in this statute, if it were out of the way, the court would, notwithstanding an appeal, pass the possession along with the right of property, unless some equitable consideration supervened to prevent it.   I have already suggested those that should influence this court to withhold that possession in this case, at least temporarily, until the appellate court can be heard from; and, I think, until the appeal is finally heard.

Moreover, if the defendants had given a bond which would have suspended the force of the decree declaring the right of property to be with the plaintiffs, the latter could not have expected the court, in the exercise of its power over receivers pending an appeal, to surrender possession to them, not because the *supersedeas* deprived the court of its power over the receiver in that behalf, but because, not having the established right of property, they would not be entitled to possession,—not any more than they would have been if the final decree had declared the right of property to be with defendants; and, certainly, if that had been done, the plaintiffs would not have wished the court, pending appeal, to let the defendants into possession, though the power to do so would have been unquestioned.   But the defendants have been deprived of that *statutory supersedeas* which would have suspended the plaintiff's right of property as declared by the final decree, by a mistake of some one, against which they may equitably ask this court to relieve them by continuing the receiver pending the appeal otherwise than through a *supersedeas,* if it has the power to do so.   That it has that power by a direct stay of proceedings for the discharge of the receiver, pending the appeal, I do not doubt.   The plaintiffs, if occasion required, could be relieved against the mistake by a reformation of the contract upon a bill for the purpose.   3 Pom. Eq. 1367; 2 Pom. Eq. 843, 845, 846, 852, *et seq.;* Bisp. Eq. 469, 871; *Ivinson* v. *Hutton*, 98 U. S. 79; *Snell* v. *Insurance Co.,* Id. 85; *Elliott* v. *Sackett*, 108 U. S. 132; S. C. 2 Sup. Ct. Rep. 375; *Pickersgill* v. *Lahens*, 15 Wall. 140; *State* v. *Frank,* 51 Mo. 98; *Craft* v. *Dickens*, 78 Ill. 131.

Let us suppose, for instance, that plaintiffs had not discovered this mistake until after an affirmance of our decree, and a suit by them upon the bond, does any one suppose they could not, on a bill, reform it according to the facts stated here, and would not defendants and their surety be liable for "damages" according to their real

intention? Then, why is the bond, within the purview of a court of equity, looking at the real facts, any less a *supersedeas* bond, here and now, upon the principle of treating that as done which ought to be done? "It is a peculiar excellence in chancery, on many occasions, that it goes behind writings, and even sealed instruments and judgments, to ascertain how the original transaction stood, and what were its true obligations, in order to enforce them." *U. S.* v. *Price*, 9 How. 83, 102. If, therefore, the defendants have been defeated of their intention—and they had the right of absolute choice upon executing the statutory bond, so that it need not be a *mutual* mistake, since the plaintiffs had no choice as to the terms of the contract—to give a *supersedeas* bond, which would have suspended the plaintiff's right of property, and, as a consequence of *that* suspension, any right of possession pending the appeal, by a mistake relievable in equity in favor of the plaintiffs, if they desired it, I do not see any reason why the plaintiffs should not be, in a court of equity, called on to act in the premises wherever the matter is involved, left to resort to that remedy, or else compelled to accept the defendants' offer to make the bond complete. Of course, only upon any just terms as to security or indemnity, and that containing the same condition as the statutory bond would be just; or an amendment of the defective bond to conform to the statute, by the consent of the surety, would be just, and precisely what a court of equity on a bill to reform the contract would grant.

On this reasoning, if it be correct, the right of this court to direct the amendment or a new bond does not depend on any jurisdiction it may have over the instrument *qua* a *supersedeas* bond, or any authority over the appellate proceedings which might be deemed a usurpation, but only on the fact that, having lawful custody of the *res*, and a plenary discretion to allow or refuse a surrender of it to the plaintiffs on their application to enforce the decree, (so far as the decree relates alone to that *custody*, and no further,) it may exercise *that* authority according to the demands of the equitable considerations here suggested, and refuse to deliver possession to the plaintiffs in spite of their unsuperseded decree, if the defendants shall voluntarily correct the mistake. And it should be remembered here that, by invoking this extraordinary authority of the court over its receivers to continue them or not upon these equitable considerations, we neither create nor restore the statutory *supersedeas*, do not substitute another, nor affect the rights of the plaintiffs growing out of any want of one. We simply and independently, upon our own terms, withhold *possession* from them until the supreme court can act. To show this distinction, let us imagine that no *supersedeas* bond had been given at all, or attempted or intended to be given, but, before the receiver was discharged, the defendants, by motion or petition, should apply to this court to continue the receiver, or to appoint one originally, pending the appeal, and we should rightfully or wrongfully do that, is it not

plain that the plaintiffs' rights of property under the final decree would not be affected by the action of the court? No more are they affected by the action we now take in continuing this receiver.

The only possible fault with this reasoning that occurs to me is, that by the final decree we adjudged, not only the right of property, but also the right of possession,—construing the decree as plaintiffs construe it,—to them; thereby technically bringing the possession of the receiver within the influence of the *supersedeas* law, so that the right to *that* possession, so decreed, could only be suspended by command of the statute, and not otherwise. The court and parties certainly intended to surrender the possession along with the right of property decreed, unless defendants complied with the statute; but the court did not intend to do so by that decree, and supposed that, if the defendants did not give the bond, the receiver would first pass his accounts, and then surrender the property by some subsequent order to that effect. But this is beside the question, and of no importance now, I think; for, being better informed, the court finds it has larger power than it was aware of, and that its continued control does not depend at all upon whether a bond was given or not. I think it is not precluded by the final decree from exercising that larger power.

In other words, it is proposed now to exercise only that power which Mr. Justice BRADLEY confirms in *Hovey* v. *McDonald*, 109 U. S. 150, S. C. 3 Sup. Ct. Rep. 136, and Mr. Chief Justice WAITE in *Leonard* v. *Ozark Land Co.*, 115 U. S. 465, S. C. 6 Sup. Ct. Rep. 127, and for the exercise of which, so far as it relates to *injunctions,* the ninety-third equity rule was established. That rule does not extend to the regulation of the practice in the matter of continuing *receivers* pending an appeal, but the power is not created by or derived from the rule at all, and exists without it. The court not yet having prescribed any precise regulations in relation to receivers, we are directed by equity rule 90 to the general practice as it existed in 1842, just as the supreme court itself is directed by its rule 3 to the practice prior to 1791. This practice, in its relation to receivers, Mr. Daniell briefly summarizes at the last citation above made from that author, and Mr. Justice BRADLEY in *Hovey* v. *McDonald, supra.* That case is somewhat complicated by a reference to the local practice on appeals from special to general term in the District of Columbia, which misled counsel in *Leonard* v. *Ozark Land Co., supra;* but a careful reading makes it very plain in its application here. I had intended to quote largely from it, but forbear, as nothing less than a careful reading of the whole case will suffice. It was the case of a receiver, and I regard it as directly in point as to the doctrine to control us here. It shows that the *supersedeas* of the statute does not suspend the power of the court below as to the receiver, pending the appeal, any more in a case coming from the circuit court than the one from which that appeal then under discussion came. It is a general principle of our appellate law, established, as to the effect of an appeal

upon an *injunction*, in the *Slaughter-house Cases*, 10 Wall. 273.    The only reasonable doubt in its application here, as before suggested, is as to the power of this court *after* the final decree and the term at which it was rendered; but the ninety-third equity rule itself recognizes that it then exists, as well as before, as it did in England, and does yet; for it directs *the judge* to exercise it when he "allows" the appeal, which may be after the term at which the final decree was rendered, and at any time within the statute of limitations.    There is no reason why *the court* may not exercise it at any time, particularly since *Goddard* v. *Ordway*, 94 U. S. 672, decides that it is the duty of the court below, notwithstanding an appeal, to give the necessary orders to preserve the property in the hands of the receiver pending the appeal whenever it remains in its possession.

Now, applying the doctrine here, and it appears that the final decree directed the possession of the receiver to be delivered to the plaintiffs.    As already explained, it was not thereby intended to determine that *pending the appeal* they should have possession.    As to that no special directions were given, as ought to have been done; but, as a fact, it was supposed that a *supersedeas* bond would be necessary to continue the receiver pending the appeal.    It was further supposed that a *supersedeas* bond had been given, and in fact the receiver has been continued without any special instructions to that effect.    A bond intended to be a *supersedeas*, but omitting the operative words, was filed, and the proof shows that the omission was by mistake.    But this mistake, under the doctrine we are considering, is beside the question, because, if there had been a good bond, it would not have superseded the directions of the final decree concerning the receiver, be they what they may; and, of course, a defective bond could have no effect in that direction.    In *Hovey* v. *McDonald, supra,* the directions to the receiver were to deliver the fund, and they were not in the decree at first, but the supreme court sanctioned the insertion of them by amendment; saying, however, that "it was merely expressing the legal effect and consequence of the decree;" so here the directions given merely expressed the legal effect of the decree without them.

The plaintiffs were as much entitled to the possession then as now, and no more now by reason of the mistake than they would be now without it.    Wherefore, when they ask us to discharge the receiver, we consider the application independently of the mistake; and, I think, for reasons stated, the court should retain its control pending the appeal, at least until the supreme court directs otherwise, and I should, as I understand the law, make the same ruling precisely if the defendants had appealed intentionally without a *supersedeas*, though at the time the appeal was granted I thought, as we all did, that a *supersedeas* was absolutely necessary to effectuate that result.    Draw a broad line between the right of property of the plaintiffs, whether they claim under the original title or the final decree, and the right

of possession, which has been in fact but not in law severed from it by the appointment of a receiver, and we have two entirely distinct things, as to one of which the defective bond may be important, but as to the other it seems not to be; and if we keep these two things apart, and do not confuse them, the case becomes clearer as to existing rights of the parties in this application. And in this connection it is useful to distinguish between that continuance of the receiver which would have necessarily resulted from a suspension of plaintiffs' *right of property* by a *supersedeas* of the final decree in their favor, and that continuance of the receiver which comes of the present action of the court. In the one, the plaintiffs' *possession* would have been arrested by the suspension of their right of property; in the other, it is arrested regardless of such suspension, and rightly on the facts of this case.

I do not know why, in this case, any terms should be imposed. We imposed none on the plaintiffs as a condition for appointing a receiver in the first instance; and, considering that the supreme court may disagree with us as to the right of property, there is no apparent reason for imposing any on defendants for continuing a custody that protects all alike till the end of the appeal. At all events, the same bond that the statute requires would, by analogy, be sufficient here. There would often be circumstances when the court should not continue the receiver at all, or only on terms indicated by the peculiarities of the case; but I recognize no such circumstances here, and think, on the whole, no terms ought to be imposed, except that the defendants have leave and be required to carry out the original design by inserting the omitted words, with the consent of the surety, if he will consent, or, if not, to file a new bond with the omitted condition supplied, and a superadded stipulation that it shall operate retrospectively to cover all "damages" from the date of the appeal. Perhaps, as these conditions are somewhat logically inapplicable to the views above expressed, and if any terms are to be imposed they should be such as the court would require independently of the mistake that has been made and of the statutory requirements for a *supersedeas*, they should not be demanded. But the defendants move to amend the bond or to file another, and are willing to do so; and, as I see no occasion on the facts of this case to impose any independent conditions for the continuance of the receiver, I see no harm in permitting them to complete the bond according to the original design, so that, if plaintiffs are entitled to any benefit of it, they can have it in such form of bond as it ought originally to have been. They cannot object to this, and it does not, if we have no power to do that here, injure them in the least, nor impose a *supersedeas* if none already exists. This disposes of the motions quite satisfactorily to my own judgment.

But, while I am not now required to go further, I should be prepared to rule, if necessary, but with great diffidence as to the correct-

ness of the conclusion in view of the sinuosities of our American law in relation to the implied appellate *supersedeas*, that this court has the power, under the authority of Revised Statutes, § 954, to direct the amendment of a writ of error or appeal-bond, and to permit the amendment asked for here, as a part of the proceedings of this court. I have not the least doubt it could be done in England, particularly in chancery; but, through the influence of statutes and the distorted growth of an American notion that an appeal transfers a case bodily into the appellate court, and strips the court below of all power over the record and the case, I am not certain that the power could be sustained here, though there is no *adjudication* of the supreme court of the United States against it, whatever may be said of expressions to be found in the opinions. Experimentally, I will permit the amendment *pro forma*, and not undertake to justify it now, since I find it unnecessary, but will cite in a note to this opinion some authorities which seem to sustain it. It is not a practical question of much value in a situation precisely like this, because the case of *Seward* v. *Corneau*, 102 U. S. 161, and other cases like it, furnish a complete remedy in the supreme court itself for the correction of the mistake made; and, if the position first assumed in this opinion be correct, the receiver would be continued independently of the statutory *supersedeas*, and that would give the defendants relief until the supreme court could act to correct the bond.

Motions of plaintiffs denied.   Motion of defendants granted.

### DECREE.

Because it appears to the court that the appeal-bond filed herein on the twenty-eighth day of September A. D. 1885, was intended, by the obligors, the court, and the judge approving the bond, to operate as a *supersedeas*, but by some mistake the words "and damages" were unintentionally omitted from the condition thereof, and for other satisfactory reasons to the court appearing, the motion of the plaintiffs to vacate the order of April 26, 1886, recalling the writ of possession issued by the clerk, and to now proceed with the execution of the final decree of August 1, 1885, by such orders as may be necessary to discharge the receiver, and deliver possession of the property in dispute to the plaintiffs pending the appeal of the defendants herein, is denied. And for the same reasons, on motion of defendants, they are permitted to amend the said bond, by interlining the words so unintentionally omitted in the place left for them in the printed blank upon which the said bond was executed, if the surety in the bond shall in writing indorse thereon his consent thereto; and it is ordered that the bond shall then operate as if said words had originally been inserted therein. And thereupon the said M. L. Bacon, surety as aforesaid in the said bond, appeared in open court, and declined to consent to the change in the bond as above allowed; and thereupon defendants moved the court to be allowed to file another bond, conditioned as required by law to operate as a *supersedeas*, whereupon they tendered a bond with J. H. Malone and W. H. Robinson as sureties, conditioned as therein expressed, which said bond is hereby accepted and approved; and it is ordered that, according to the tenor and effect thereof as established by law and by the consent of said sureties and the defendants herein, it shall be taken, and in all respects operate, to supersede the said final decree

pending the appeal heretofore granted in this case, and that, in pursuance thereof, and in obedience to the statutes in that behalf regulating the *supersedeas* of proceedings pending an appeal, the execution of said decree be, and it is hereby, stayed, as it has been heretofore stayed since the said appeal was taken, the property remaining in the hands of the receiver, as heretofore; the original bond not to be affected in any way by the allowance of the new bond, but to stand as if this order had never been made.

To all of which the plaintiffs except, and ask that their exception be entered of record, and that the affidavits used upon both sides upon the hearing of these motions be filed as a part of the record, and taken as such to all intents and purposes as if they were incorporated in a bill of exceptions, which, in that respect, this order shall be taken to be, which is granted, and it is done accordingly. And thereupon the plaintiffs pray an appeal from this order, and from that of April 26, A. D. 1886, which is allowed; and their bond for $250, conditioned as appeal-bonds are required by law to be, with T. B. Edgington as surety therein, executed and filed this day, is accepted and approved by the court,—the defendants in open court waiving all other citation and notice; the affidavits so used upon the hearing of these motions, and so as above made a part of the record, and as though embraced in a bill of exceptions for the purposes of this appeal, being those of C. W. Frazer and D. H. Poston, dated June 22, A. D. 1886, and of T. B. Edgington, dated June 28, A. D. 1886, and of W. B. Weisiger, dated June 29, A. D. 1886; the same being properly filed, and entitled in this cause.

## NOTE BY JUDGE HAMMOND.

AMENDMENT OF THE BOND. Rafael v. Verelst, 2 W. Bl. 1067; S. C. Cowp. 425. There were two defendants, with verdict against one and in favor of the other. Writ of error joined both, as did the bail in error, which was by recognizance. Motion, in the appellate court, to amend the writ, granted. Same day *fi. fa.* issued and levied, although plaintiff in error offered to alter the recognizance; motion in court below to quash *fi. fa.*, and to amend the recognizance, granted; and bail in error entered into a new recognizance. In Justice v. Mersey Steel Co., 1 C. P. Div. 575, the old practice of giving bail in error on appeal to house of lords being still in force, the defendants in error, not knowing that, put in no bail; *fi. fa.* issued; application to appellate court to extend time and stay execution pending appeal. Held, application should be made to the court below.

Attorney General v. Swansea, etc., Co., 9 Ch. Div. 46. Practice now in England that in equity cases application to stay proceedings for any cause pending appeal should be made by to the court below in the first instance, and, if refused, then to appellate court by " motion by way of the appeal." But see Wilson v. Church, 11 Ch. Div. 576; S. C. 12 Ch. Div. 454.

That a bail-bond could always have been amended, see 1 Bac. Abr. 567, tit. " Bail in Civil Cases," D 4; Hampton v. Courtney, Cro. Jac. 272; Anderson v. Noah. 1 Bos. & P. 31, and numerous other common-law authorities.

In the chancery practice of England there was no difficulty; for, if the stay of proceedings should be granted below, of course the terms as to security bonds, etc., were all in the control of that court, but if by the house of lords, then, of course, in the control of that court; and, in both, the proceedings were subject to amendment as liberally as proceedings in chancery always were, but the application had to be made to the court in which the stay had been obtained. The only difficulty in our practice is in determining to which court the bond belongs, or in which the proceedings for stay may be said to be taken; for, unlike a writ of error at law, the appeal is *granted* below, while the bond is taken below in both; and in neither is the *supersedeas* directly and expressly ordered, as it always is in chancery in England, but comes by an implication from the statute, addressed alike to both the appellate court and the court below. 2 Daniell, Ch. Pr. (1st Ed.) 675; 3 Daniell, Ch. Pr. 105, 109, 134, 136, 140, and 97–150 generally; 2 Daniell, Ch. Pr. (3d Ed.) 1467.

In Arnold v. Frost, 9 Ben. 267, BLATCHFORD, J., held that an appeal-bond was so much a part of the suit in which it is given that an action on it might be maintained in the same court where given, *as ancillary to the original suit*, on a question of jurisdiction.

In Tipton v. Cordova, 1 N. M. 383, an appeal-bond was held to be "process" under the internal revenue act, and as such required a stamp.

In Bentley v. Jones, 8 Or. 47, it was held that the appeal-bond was not properly a

part of the transcript in the appellate court on an appeal from the judgment made upon a motion to quash a *fi. fa.*, but belonged to the files in the court below, etc.

In Martin v. Hunter's Lessee, 1 Wheat. 304, 361, it was said: "But there is nothing in the record by which we can judicially know whether a bond has been taken or not; for the statute does not require the bond to be returned to this court, and it might, with equal propriety, be lodged in the court below," etc.

In Irwin v. Bellefontaine Bank, 6 Ohio St. 81, it was held, under a statute almost identical with our Rev. St. U. S. § 954, that an appeal-bond is a "proceeding," and as such amendable. Therefore the appellate court allowed the defective bond to be amended, with consent of the surety, or a new one to be filed.

In Williams v. McConico, 25 Ala. 538, the bond *appeared* to have been approved after the appeal, but on affidavit the court sent a *certiorari* to the judge below to certify when it was *in fact* approved, and would not dismiss the appeal until the truth was made known.

In Dobbins v. Dollarhide, 15 Cal. 374, FIELD, C. J., held that, if the appeal-bond do not operate as a stay, the remedy is by motion, *in the court below*, for leave to proceed notwithstanding the appeal, and not to dismiss the appeal.

In Schenck v. Conover, 13 N. J. Eq. 81, it it distinctly stated that, outside of a rule of court regulating the *supersedeas* very much as our Revised Statutes do, a court of equity may interpose to protect the parties pending an appeal, and stay or allow the decree to be executed, according to circumstances. And so in Granger v. Craig, 85 N. Y. 619, that the statutory *supersedeas* was not the entire reliance of the appellant, but the court below might stay proceedings when equitable to do so.

Abundant authority could be cited to this point, but care should be taken not to abrogate the statutory requirement of a *supersedeas* bond, though this power has always existed since 13 Jac. I. c. 8, qualified the absolutely suspensive effect of a writ of error; and the danger of trenching on the statute is not great. Our act as to this statutory *supersedeas* assimilates appeals to writs of error at law, and, certainly, a court of equity can exercise the same discretion as did a court of law under the statute of James; and the books are full of cases where the court has refused to issue execution pending error, upon considerations extraneous to the four corners of the bond. But a court of equity essentially has a larger power, growing out of its control over appeals in this matter of staying further proceedings; and when our original act, requiring a decree in equity to be reviewed only by *writ of error*, was repealed, and the *appeal* substituted therefor, presumably congress intended to remove the restrictions imposed, by the anomaly of a writ of error in equity, upon that larger power, both as to the authority of the appellate court and the court of original cognizance.

When, therefore, the statute invests the court of original cognizance with the power to grant an appeal, and leaves it to exercise the usual powers in that behalf, among them was that to stay proceedings pending the appeal in all those circumstances where before it could have been done if not forbidden by the statute, or fairly not forbidden by implication from it; and, necessarily, when it is called upon to take a bond, that "proceeding," like the rest, must be liable to amendment, under·Rev. St. § 954, if the jurisdiction of the court be subsequently invoked to rule upon that bond, and the circumstances surrounding its existence, as it must if the court be applied to for the execution of the decree notwithstanding the appeal. Our equity rule 85 recognizes this power of amendment even of decrees, and I see no reason why, under the general power existing outside that rule, it may not amend an appeal-bond, at least for its own purposes of procedure in delaying execution of the decree until the appellate court issues its mandate in the premises, whether the supreme court recognizes *that* amendment as sufficient for *its* purposes of procedure on the appeal or not.

And, finally, I think section 954 of the Revised Statutes gives the party a right to such an amendment before the court can take advantage of the mistake, and execute the decree, to the defeat, perhaps, of the appellate control of the litigation. Authorities are in almost every volume of reports and text writers prescribing the reasonable and intelligent conditions under which such amendments should be allowed or refused, whether in the one court or the other.