HIGGINS OIL & FUEL CO. et al. v. DELANEY et al.

(District Court, W. D. Louisiana. February 6, 1920.)

No. 43.

1. QUIETING TITLE ⬤⟷12(3)—POSSESSION OF PLAINTIFF NOT ESSENTIAL WHERE PRIMARY PURPOSE OF SUIT WAS TO CORRECT DEED.

Equity *held* to have jurisdiction of a suit to quiet title to land of which neither party was in possession, where the primary purpose was to correct a deed.

2. REFORMATION OF INSTRUMENTS ⬤⟷44—PAROL TESTIMONY ADMISSIBLE.

The rule that parol testimony is inadmissible to contradict or vary a written instrument is not applicable in a suit for reformation of such instrument for alleged error.

3. REFORMATION OF INSTRUMENTS ⬤⟷26—RIGHT OF VENDOR TO RELIEF.

The right of a purchaser to have an equity court correct a former deed in the chain of title must lie also in his vendor.

4. REFORMATION OF INSTRUMENTS ⬤⟷4, 32—REMEDY IS DISCRETIONARY WITH COURT.

The remedy by suit in equity to reform a deed is discretionary with the court, and relief will not be granted where the error originated in the recording of a deed nearly 50 years before and was continued through all subsequent conveyances and complainant bought the land in controversy with knowledge that his vendor had no paper title.

In Equity. Suit by the Higgins Oil & Fuel Company and others against J. B. Delaney and others. Decree for defendants.

Orgain, Butler, Bolinger & Carroll, of Beaumont, Tex., and Thigpen & Herold, of Shreveport, La., for plaintiffs.

Goff & Barnette, of Arcadia, La., and John S. Richardson, of Homer, La., for defendants.

JACK, District Judge. This suit was originally brought at law as an action in jactitation, but the pleadings were later reformed so as to convert it into one to correct a deed to land, and the case was transferred to the equity docket. The correction sought is the addition to the lands specifically described by government subdivisions, of the E. ½ of N. E. ¼ of S. E. ¼ of section 19, containing 16.32 acres.

In 1871, one Langford sold to the minor heirs of Martha Delaney a certain tract of land described by government subdivisions and said to contain 220 acres, more or less. In the recordation of the deed, that portion of the land described as the "S. E. ¼ of the S. E. ¼ and E. ½ of N. E. ¼ of S. E. ¼ of section 19" was erroneously recorded, "S. E. ¼ of S. E. ¼ or E. ½ of N. E. ¼ of S. E. ¼ of section 19." At various times thereafter, the defendants J. B. and Anna Delaney bought the interest of the remaining heirs. There was, however, omitted from the deeds from the other heirs the said 16.32 acres which had previously, in the recordation of the deed from Langford, been erroneously preceded by the disjunctive, "or," instead of the copulative conjunction, "and."

In 1911, the defendants J. B. and Anna Delaney, having so acquired the interest of the other heirs, sold to Featherston by deeds de-

scribing the land by the same description contained in the deeds from their coheirs, and, consequently, omitting the said E. $\frac{1}{2}$ of the N. E. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$ of section 19. About a month after making the purchase, Featherston made a dation en paiement of said property, as described in his deed, to his wife, and Mrs. Featherston, in 1919, sold to plaintiff Higgins Oil & Fuel Company a one-half interest in the mineral rights in said land so acquired from her husband. A few months thereafter, Featherston sold to Orgain, attorney for Higgins Oil Company, the 16.32 acres herein involved.

This suit was then brought by plaintiffs against J. B. and Anna Delaney and their coheirs, alleging that Featherston had purchased the entire Delaney place; that said E. $\frac{1}{2}$ of the N. E. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$ of section 19 had been omitted from the deed from J. B. and Anna Delaney to Featherston by error; and praying that such deed be corrected so as to include said E. $\frac{1}{2}$ of N. E. $\frac{1}{4}$ of S. E. $\frac{1}{4}$ of section 19, and that defendants be enjoined from further claiming or asserting title to said land. Defendants other than J. B. and Anna Delaney, averring sales of their interest in the land to the latter, disclaim any interest in the suit. J. B. and Anna Delaney in answer deny that any error was made, as alleged, in their title to Featherston, and pray that plaintiffs' demands be rejected.

[1] Neither party is in possession of the land in controversy, and it is contended by the defendants that, consequently, an action in equity to remove a cloud from title cannot be maintained. Pomeroy, in his work on Equitable Remedies (section 731), states:

"When the estate or interest to be protected is equitable, the jurisdiction should be exercised, whether the plaintiff is in or out of possession, for, under these circumstances, legal remedies are not possible. * * * In some of the cases, the rule is so broadly stated as to require a plaintiff seeking to have a cloud removed, under all circumstances, to be in possession, while, on the other hand, it is stated that possession is never essential. Both of these extreme views are open to criticism, and the case should always be considered with reference to the facts actually before the court. Where, however, neither party is in possession, * * * it has been generally admitted that the remedy at law is inadequate, and that equity has jurisdiction to remove or prevent a cloud."

I think such a suit in equity to remove a cloud from the title may be maintained; furthermore, this suit is primarily one to correct a deed, and, for such purpose, a court of equity clearly has jurisdiction.

[2] Defendant in the trial of the case objected to the admission of any parol testimony to correct or enlarge the deed. The rule that parol testimony is inadmissible to contradict or vary a written instrument is not applicable in a suit for the reformation of such instrument on allegations of error. Simmons Creek Coal Co. v. Doran, 142 U. S. 417, 12 Sup. Ct. 239, 35 L. Ed. 1063; Ivinson v. Hutton, 98 U. S. 79, 25 L. Ed. 66. See, also, various cases cited in Louisiana Digest Annotated, vol. 3, p. 223.

Negotiations for the purchase of the property were conducted by Featherston with J. B. Delaney. The testimony of the former is that he proposed to Delaney to purchase the Delaney home place, and offered a price of $1,000, which Delaney accepted; that the latter

stated at the time that the place contained 220 acres; that he (Featherston) thereafter met Delaney and his sister, Anna Delaney, at the office of Mr. Fortson, recorder; and that, on their statement that Featherston had bought the Delaney place, and their request to draw the deed, Fortson did so, getting the description from the deeds to J. B. and Anna Delaney from their coheirs, in which deeds, as before stated, was not included the land in controversy. This is likewise, in effect, the testimony of Mr. Fortson, and the defendants. Plaintiffs' contention is based on the claim that he intended to buy, and J. B. and Anna Delaney intended to sell, all of the home place, and that, the land in controversy having been omitted in error, the deed should now be corrected so as to include it.

Delaney testifies that he purposely omitted the land because he was advised to do so by Mr. Ferguson, now deceased, former clerk of court, who stated that there was some question as to the title. Anna Delaney in her testimony made no allusion to such advice from Ferguson, and swears frankly that she did not think she was reserving any of the land from the deed. Delaney subsequently told other parties that he had sold all of his land. He does not claim to have mentioned Ferguson's advice to Featherston at the time of the sale, and his belated statement as to such neither harmonizes with the testimony of other witnesses nor his own, and I cannot accept it as true. I think the evidence conclusively shows that Featherston did, in fact, intend to buy, and J. B. and Anna Delaney did intend to sell, all of the land embraced in the Delaney place, and that the land in controversy was omitted because neither they nor Featherston knew that they owned it. Featherston did not discover that the Delaneys did own the land in question until eight years after his purchase, and would not then have discovered it, but for the fact that the land had become very valuable, worth in excess of $500 an acre, by reason of the oil development on neighboring lands. The alleged error was finally discovered, not by Featherston, but by the Higgins Oil & Fuel Company, in whose deed to one-half mineral rights was not included the land in controversy, and who had no interest whatever therein.

Upon such discovery, Orgain, realizing the fact that the land in question could not be claimed under the deed to his company, as it was neither included in that deed nor in the deed from Featherston to his wife, although the description in such deeds was identical with the description in the deed from the Delaneys to Featherston, took, in his own name, a deed direct from Featherston to the land in question.

While one of the deeds from the coheirs to J. B. and Anna Delaney adds to the descriptions of the land conveyed, the phrase "being the Delaney home place," no such saving clause was included in the deed to Featherston. He simply bought by government subdivision certain lands said to embrace 220 acres. As a matter of fact, the acreage was 215, the shortage of 5 acres being due to the fact that section 19 was a short section. Furthermore, at the time he purchased, Featherston testifies, Delaney showed him the corners of the land. This, then, is not a suit to correct an ordinary error in description, such as the calls of a survey, but it is a suit to have added to the deed a half of a quar-

ter-quarter section, wholly omitted. Featherston got all of the land specifically described in his deed, and, as the corners of the land were at the time pointed out to him, it is evident that the land he got was the identical land he expected to get.

Some two years after his purchase, Featherston had the land surveyed, the surveyor running out the land as called for in the deed, and still no complaint was made or claim urged that there had been any land improperly omitted. In fact, as before stated, Featherston remained in contented ignorance that any mistake in describing the Delaney lands had ever been made by any one until a year ago, and, in all likelihood, would never have discovered such error but for the fact of the great increase in the value of the land due to oil development.

Featherston's deed called for 220 acres, more or less. The phrase "more or less" has no significance under the Louisiana law, which provides that, in event the land sold exceed or fall short upwards of one-twentieth of the acreage stated in the deed, the vendor on the one hand, or the vendee on the other, may claim, respectively, a supplement or a diminution of the price. The actual acreage conveyed to Featherston was only 5 acres short of that called for in his deed, less than one-twentieth; but, should the deed be corrected, so as to include the land in controversy, 16.32 acres, he would receive 231.32 or 11.32 acres in excess of what his deed called for, more than one-twentieth. Should the court correct the deed by adding this 16.32 acres, defendants would then have an action against plaintiffs for a supplement of the price covering this 11.32 acres in excess of the 220 acres named in the deed, but only for about $5 an acre, whereas its present value is a hundred times that sum. Civil Code, 2492, 2493, 2494.

May Featherston or his vendees now demand from the Delaneys deed to this 11.32 acres, which, at the time of its purchase and for many years thereafter, Featherston had no idea he was purchasing? Neither Featherston nor his wife are parties plaintiff to this suit, and Orgain, who purchased the land in controversy from Featherston, did so with full knowledge that the latter had no record title, and that he was buying a lawsuit. His claim now is that his deed from Featherston should be made good by a reformation or correction of the deed from the Delaneys to Featherston, so as to include this land which Featherston never even supposed, at the time, or for many years thereafter, that he was buying.

While plaintiffs do not pray for the correction of the various deeds to J. B. and Anna Delaney from their coheirs, dating back as far as 1896, or the correction of the original error in the recordation of the deed from Langford to the Delaney minors in 1871, but pray only for the correction of the deed from J. B. and Anna Delaney to Featherston in 1911, yet such would be the practical effect of a correction of the latter deed. The law does not favor stale demands.

[3] The right to have an equity court correct a deed must lie in the vendor as well as the vendee; yet it could hardly be maintained, at this late date, that, had there been no oil discovered, and had it been defendants J. B. and Anna Delaney, who desired a correction of the deed, they could have maintained a suit against Featherston for a correction of

the deed so as to include the land in controversy, and forced him either to pay them the supplement of the price or recede from the original transaction, as provided in article 2493 of the Civil Code.

[4] The remedy by suit in equity to reform a deed is not absolute, but it is discretionary with the court, whether, under all of the circumstances, the remedy is necessary to complete the ends of justice. 34 Cyc. 907. The facts disclosed do not present such a case.

Plaintiffs' demands will be rejected at their costs.