## HEIDELBERG BREWING CO. v. NORTH AMERICAN SERVICE CO.

### No. 4122.

District Court, E. D. Kentucky, at Covington.

Feb. 9, 1939.

Stephens L. Blakely and Stanley Chrisman, both of Covington, Ky., for plaintiff.

Howard & Howard, of Covington, Ky., for defendant.

FORD, District Judge.

The plaintiff is a Kentucky corporation engaged in manufacturing and selling beer and malt beverages. The defendant, an Illinois corporation, is engaged in the business of outdoor advertising.

In preparation for an extensive advertising campaign, some time in the fall of 1935, the plaintiff, through its advertising manager, entered into negotiations with the defendant which culminated in the execution of two contracts by the parties dated April 15, 1936, and June 1, 1936, respectively. By the terms of these contracts, the defendant leased to the plaintiff for a period of 24 months a large number of its "Starlume" outdoor displays bearing the advertisement of the plaintiff's products "Student Prince Ale and Beer", and agreed to erect and maintain the displays along certain public highways leading to various cities in Kentucky and other states. For this service the plaintiff agreed to pay the defendant a stipulated monthly rental for each display. Both contracts contained the covenant on the part of the defendant that it "will not place any beer or ale advertisement upon its Starlume displays during the existence of this contract in or along the highways radiating from" various cities named in the contracts.

It appears from the evidence that these so-called "Starlume" displays were novel and distinctive in respect to the composition and construction of the lettering on them, and the defendant held patents covering these novel and distinctive features.

The displays were erected and maintained in accordance with the contracts. The plaintiff paid the rentals until March 1937, when it was discovered that displays with lettering similar in composition and character had been erected and maintained in the prescribed territory advertising "Oertels '92 Ale and Beer", products manufactured and sold by one of the plaintiff's competitors. Thereupon, the plaintiff refused to make further rental payments, and this action ensued. It is neither shown nor claimed by the plaintiff that the similar displays advertising Oertels '92 Ale and. Beer were sold or erected by the defendant or by any one acting with its connivance or consent. It appears that they were made and sold by a former employee of the defendant against whom the defendant has since instituted and is now engaged in prosecuting actions for infringement of its patents.

By this action, the plaintiff seeks to be relieved of its further obligations under the contracts, claiming that the actual agreement entered into by the parties was to the effect that the defendant warranted to the plaintiff that no similar displays would be used in the designated territory by the defendant or by any other firm, person or corporation; that such warranty was an essential and controlling consideration of the agreement and was omitted from the writing by mutual mistake of the parties and inadvertence of the draftsman. It asserts an equitable right, therefore, to have the contract reformed to conform to the true agreement and an adjudication that the existence of the similar advertisements in the territory constitutes a breach of the true agreement and a failure of the consideration thereof, entitling the plaintiff to be relieved of further rental payments. The defendant denies the allegations of the petition and by counterclaim seeks recovery of the balance of the unpaid rentals due under the contract.

When parties reduce their engagements to writing, the written instrument must be treated as the true expression of their intentions and the full measure of their obligations until the contrary is established by proof of fraud or mutual mistake so clear and convincing as to be beyond reasonable controversy. Ivinson v. Hutton, 98 U.S. 79, 25 L.Ed. 66; Dotson v. Hunt, 207 Ky. 832, 270 S.W. 38; Bernheim v. Duane, 209 Ky. 744, 273 S.W. 458.

If the law were otherwise, written contracts would have little value and would be of slight consequence in preserving and establishing the rights and liabilities of parties. Hence, courts of equity, in the exercise of their jurisdiction to reform written instruments, proceed with the utmost caution. Obviously, the requirement of clear and convincing proof to establish an alleged omission from a written contract by mutual mistake is an essential precaution against the danger of imposing upon parties doubtful conditions or serious obligations to which they may not have assented.

The proof upon which the plaintiff relies to support its claims is to the effect that before the execution of the contract its advertising manager, Mr. Fish, and its president, Mr. Meyerratken, made it plain to Mr. Brumbaugh, president of the defendant company, that they would not contract for the expensive service provided by these contracts unless a provision was inserted granting them exclusive use of these displays in the territory covered by the contracts; and that the defendant's president, Mr. Brumbaugh, said: "We can protect you on that", and further "We have patent rights on this sign and we could stop anybody else using it." Mr. Meyerratken requested that a provision be inserted in the contract with respect to this matter, and thereupon a supplement was formulated containing the covenant on the part of the defendant that during the existence of the contract, the defendant would not place any beer or ale advertisements upon its Starlume displays in the designated territories. This provision fixing the measure of protection to the plaintiff in the enjoyment of the rights afforded under the contract, was not formulated hurriedly or carelessly but is clearly shown to have been the result of deliberate consideration by both parties after rather prolonged discussion of the subject. The testimony of Mr. Brumbaugh, president of the defendant company, is, in substance, that he told Mr. Fish and Mr. Meyerratken that his company held a patent on the display and that it was the policy of his company not to place competitive ad-

vertisements in the territory of their customers and he was willing to insert such a provision in the contract. After the provision was inserted by a supplement, and carefully read and considered by Mr. Meyerratken, he indicated his full concurrence and satisfaction with it by signing the contract. Mr. Brumbaugh testifies that there was no understanding or agreement between them by which he undertook to warrant or guarantee that no firm, person or corporation would or could infringe his company's patents, or that persons over whom he had no control would not use a similar type of advertising in the territory.

The parties who made these contracts were experienced and intelligent business men, fully capable of understanding and expressing their agreements. Before signing the contracts, they discussed and considered the nature of the obligations to be assumed and deliberately put those obligations in writing. It is not claimed by the plaintiff that by the agreement set out in the writing it was not given as much protection against infringement as the patents afforded the defendant itself. While it might have been more prudent for the plaintiff's president to have insisted upon a greater degree of protection, it is not shown that he demanded anything more or that the defendant assented to anything more.

Clear and convincing evidence is lacking to support the plaintiff's claim that concurrence in the plain and unambiguous statement contained in the writing was due to mutual mistake of the parties, or error of the draftsman, or that the broad guarantees now claimed by the plaintiff were a part of the consideration of the actual agreement or were omitted by mutual mistake.

Granting that the evidence for the plaintiff shows that it was the intention of the parties to afford plaintiff the exclusive right to the use of defendant's patented displays in the designated territories, this, with nothing more, falls far short of showing that the defendant guaranteed to prohibit persons over whom it had no control from infringing upon its patents or warranted that it would protect plaintiff's exclusive use against all the world. The mere grant of the right to the exclusive use of a patented article does not impose upon the grantor the absolute obligation to protect the grantee from infringement in the absence of an agreement to that effect. Martin v. New Trinidad Lake Asphalt Company, D. C., 255 F. 93.

My conclusion from the evidence is that the real agreement of the parties did not place upon the defendant any obligation to warrant or guarantee the plaintiff against infringement upon its use of Starlume displays in the designated territory by persons over whom the defendant had no control and who used similar displays without its consent; that such provision was not omitted from the writing by mutual mistake of the parties, did not constitute a part of the consideration, and hence the failure of the defendant to prevent the use of similar displays by such unauthorized persons does not entitle plaintiff to be relieved of its contractual obligations on the ground of failure of consideration or breach of contract.

Being of the opinion that the evidence is entirely insufficient to measure up to the standard required to authorize the equitable relief sought by the plaintiff, it must be denied. The defendant is entitled to judgment for the amount sought by its counterclaim.

Let formal findings of fact and conclusions of law and judgment in conformity herewith be submitted for entry.