**John J. McGUIRE, Plaintiff,**

v.

**UNITED STATES POSTAL SERVICE, Defendant.**

**No. 86 Civ. 8229 (WCC).**

United States District Court, S.D. New York.

Nov. 2, 1990.

School's consent to access the grounds/files.

Thomas F. Bello, P.C. (Thomas F. Bello, Louis M. DiLuzio, of counsel), Staten Island, N.Y., for plaintiff.

Otto G. Obermaier, U.S. Atty., S.D.N.Y. (Allan N. Taffet, Asst. U.S. Atty., of counsel), New York City, for U.S.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

This action is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, for employment discrimination and retaliation. Defendant, United States Postal Service, moves for summary judgment pursuant to Fed.R. Civ.P. 56(c). For the reasons set forth below, defendant's motion is granted in part and denied in part.[1]

## BACKGROUND

### A. *Plaintiff's Postal Employment from 1980 to 1986.*

Plaintiff, John J. McGuire, worked as a regular letter carrier for the Staten Island branch of the United States Postal Service ("Postal Service") from December 1980 until January 1986, but for a twelve-month break in employment. In or about January 1983, the Postal Service dismissed McGuire for allegedly being a safety hazard. McGuire challenged that dismissal by initiating labor grievance procedures pursuant to the Collective Bargaining Agreement between the Postal Service and the National Association of Letter Carriers. McGuire was reinstated to the Postal Service pursuant to an arbitration decision in January 1984 but did not actually recommence working until March 1985. In his final decision, rendered in August 1985, the arbitrator awarded McGuire back pay and permanent reassignment from the postal carrier craft to the postal clerk craft retroactive to January 10, 1984. *See* August 1985 Arbitration Decision.

In January, 1986, the Postal Service again terminated McGuire, this time for alleged persistent insubordination. *See* Notice of Proposed Removal. McGuire, again, chose to challenge the Postal Service's termination decision through the labor arbitration grievance process. Nevertheless, the Postal Service's termination decision was upheld by Arbitrator Thomas F. Carey on May 10, 1987. *See* Arbitration Decision of May 10, 1987.

### B. *History of the Instant Federal Lawsuit*

1. Plaintiff's Participation in Equal Employment Opportunity ("EEO") Proceedings in July and August 1985

(a) *McGuire's First EEO Complaint*

In July 1985, McGuire sought EEO counseling regarding alleged employment discrimination by the Postal Service. McGuire charged that the Postal Service

---

1. In order to avoid dismissal of his surviving claim under Rule 12(b)(1) of the Federal Rules of Civil Procedure, plaintiff must seek to substi-

tute, *nunc pro tunc,* the Postmaster General as the only named defendant in this action within thirty days of this order.

failed to promote him to the position of training technician based on his advanced age. McGuire subsequently filed an EEO complaint on August 30, 1985, alleging age discrimination based on his failure to obtain the technician position. McGuire withdrew that complaint on November 8, 1985.

(b) *McGuire's Second EEO Complaint*

McGuire also sought EEO counseling in August 1985. That EEO participation culminated, approximately three months later, in the filing of another EEO complaint by McGuire on November 23, 1985. In that complaint, McGuire alleged that he had been harassed and discriminated against. Following an unsuccessful hearing, McGuire filed a final appeal to the full Equal Employment Opportunity Commission (the "Commission") on or about January 21, 1986. The Commission issued its decision on October 17, 1986. Upon its review of the record, the Commission found McGuire's allegations to be "vague" and the prior EEO investigation incomplete. The Commission remanded McGuire's complaint to the agency for further processing by EEO counselors in accordance with applicable regulations.

2. EEO Administrative Proceedings

Pursuant to the Commission's October 17, 1986 decision, EEO officers at the Postal Service further investigated and refined McGuire's charges of discrimination. Following its more thorough review of McGuire's charges, the agency articulated McGuire's allegation of employment discrimination as follows:

Complainant alleges Reprisal actions in that after he was restored to duty via arbitration and EEO involvement. [sic] Management refused to implement arbitrator's award. Denied him form CA–1 and refused to allow him to visit his family doctor following his traumatic injuries.

*See* EEO Report of Investigation dated December 18, 1986.

On January 20, 1988, McGuire was accorded a full evidentiary hearing before an Administrative Law Judge ("ALJ"). The ALJ heard two charges raised by McGuire:

Did the Agency discriminate against the complainant on account of reprisals for prior EEO involvement, when, it allegedly failed to implement an arbitrator's award dated August 14, 1985 and when it allegedly refused to give the complainant a CA–1 injury form on August 17, 1985?

*See* EEOC hearing Transcript dated January 20, 1988. On March 13, 1988, the ALJ ruled that McGuire had not been discriminated against in the terms and conditions of his employment in retaliation for his prior EEO activities. *See* EEOC Decision dated November 10, 1988. McGuire appealed the ALJ's decision to the full Commission on March 25, 1988. The Commission reviewed three specific charges of retaliation raised by McGuire:

(1) the Postal Service's delay of nine days in providing McGuire with a particular injury claim form (a CA–1 form);
(2) the Staten Island Post Office Safety Specialist's directive, after McGuire incurred an on-the-job injury in September 1985, that McGuire be transported to a local hospital emergency room for evaluation and treatment; and
(3) the Postal Service's alleged failure to implement the remedial relief enumerated in the August 14, 1985 arbitration award.

*See* EEOC Decision dated November 10, 1988.

With respect to the CA–1 form and the September 1985 incident, the Commission upheld the ALJ's decision that McGuire had not been discriminated against in retaliation for his prior participation in EEO activities. *Id.* The Commission, however, directed the Postal Service to supplement the record with respect to the means by which the agency implemented the August 1985 arbitration award.

3. The Second Amended Complaint in the Instant Lawsuit

Following the issuance of the Commission's November 1988 final decision, McGuire filed an Amended Complaint with this court on December 29, 1988. McGuire filed a Second Amended Complaint on July 17, 1989. That complaint alleged employ-

ment discrimination by the Postal Service based on McGuire's age and national origin and in retaliation for McGuire's prior participation in EEO proceedings. On October 18, 1989, the Court entered a Stipulation and Order dismissing without prejudice McGuire's age and national origin claims, which had not been exhausted administratively below.

Plaintiff's instant lawsuit centers on four specific acts of alleged retaliation:

(1) management's delay in providing plaintiff with a CA–1 injury claim form,

(2) management's direction of plaintiff to travel to the emergency room of a local hospital after incurring an on-the-job injury;

(3) defendant's alleged failure to implement the arbitrator's award dated August 14, 1985; and

(4) plaintiff's termination on January 26, 1986, allegedly in retaliation for his EEOC activities.

While claims (1)–(3) were raised in the EEO administrative proceedings, both parties to the lawsuit concede that the EEO administrative record is devoid of any evidence that McGuire ever sought to file formal charges alleging that his dismissal in January 1986 was based on retaliation for his earlier participation in EEO activities. Defendant's Memorandum at 9; Plaintiff's Memorandum at 7.

## C. *The Three Alleged Acts of Retaliation Raised Administratively by McGuire*

### 1. The CA–1 Form Incident

On or about August 16, 1985, Postal Service supervisors claimed that McGuire failed to follow proper procedures when "stepping off" his post at the Staten Island Post Office. McGuire Dep. at 18–19. McGuire was disciplined for allegedly ignoring Post Office procedures. Following that disciplinary criticism, McGuire began to experience pains in his chest, nausea, sweaty palms, and dizziness. McGuire Dep. at 22. McGuire was immediately transported to St. Vincent's Hospital in Staten Island. McGuire Dep. at 23–24.

On August 21, 1985, McGuire returned to work at the Staten Island Post Office. McGuire Dep. at 25. McGuire spoke to Cynthia Harkins, Safety Assistant at the Post Office at Staten Island, and requested a Form CA–1. That form is the Federal Employees' Notice of Traumatic Injury and Claim for Continuation of Pay/Compensation. McGuire Dep. at 25–27. Upon the direction of her supervisor, Safety Specialist James F. Dierking, Harkins provided McGuire with a CA–2 form and suggested that McGuire complete it, instead, because he did not meet the United States Department of Labor, Office of Worker Compensation ("OWCP") criteria for traumatic injury. McGuire Dep. at 25–27; Dierking Dec. at ¶ 5. The CA–2 Form, entitled "Notice of Occupation Disease," was the form supplied to Postal Service employees with illness of the type apparently suffered by McGuire. Dierking Dec. at ¶ 5. Nevertheless, McGuire continued to insist that he be provided with the CA–1 form. McGuire Dep. at 26–27.

On August 30, 1985, Safety Specialist Dierking directed Harkins to provide McGuire with the CA–1 form. Dierking Dec. at ¶ 6; Harkins Dec. at ¶ 4. McGuire submitted the CA–1 form to the OWCP on that date. Dierking Dec. at ¶ 6; McGuire Dep. at 28, 30. McGuire failed, however, to submit the additional medical evidence requested by the OWCP to substantiate his claims as stated in the CA–1 form. McGuire Dep. at 33; Dierking Dec. at ¶ 6; Compensation Order Rejection of Claim Case No. A2–548104 dated December 11, 1985. The OWCP had requested this additional information through letters sent to McGuire on October 15 and 31, 1985. McGuire Dep. at 32–33; Compensation Order. Based on McGuire's repeated failure to respond to OWCP's requests for further information, the OWCP rejected McGuire's CA–1 claim. Dierking Dec. at ¶ 6; McGuire dep. at 31; Compensation Order.

While defendant claims that at no time during 1985 (or 1986) did Safety Specialist James F. Dierking know of McGuire's prior participation in EEO activities, plaintiff contests this assertion. Dierking Dec. at ¶ 9; Harkins Dec. at ¶¶ 1–3.

### 2. The September 12, 1985 Incident

At about 7:00 a.m. on September 12, 1985, McGuire injured his back while on duty at the Staten Island Post Office. Dierking Dec. at ¶ 7. Although mobile, McGuire was apparently in great pain. McGuire Dep. at 34–35. Safety Specialist James F. Dierking, Safety Assistant Cynthia Harkins, and McGuire's supervisor, Ed Smith, met with McGuire to assist him in obtaining medical attention. Dierking Dec. at ¶ 7; McGuire Dep. at 35.

At this point the parties' statements regarding the ensuing events diverge. Defendant claims that McGuire was asked to identify the treating physician whom he desired to visit. According to defendant, McGuire indicated that he wished to see Dr. Lanting, who was located in Staten Island. Dierking Dec. at ¶ 7. Dierking then claims to have looked up Dr. Lanting in the yellow pages of the telephone book and to have ascertained that, according to the office hours listed for Dr. Lanting, the office was not yet open. Nevertheless, defendant claims that Dierking or Smith attempted, unsuccessfully, to contact Dr. Lanting. Dierking Dec. at ¶ 7.

Because McGuire's personal physician was unable to examine McGuire promptly, Dierking and Smith instructed McGuire to utilize Postal Service transportation to travel to Doctors Hospital in Staten Island for medical evaluation and emergency treatment. Dierking Dec. at ¶ 8. McGuire allegedly refused to receive the proffered medical treatment, and, instead, arranged to be taken home by his daughter. McGuire Dep. at 43. At approximately 7:30 p.m. that evening, McGuire travelled by car to New Jersey to see an orthopedic specialist. Id.

Plaintiff tells a different story. McGuire claims that upon notifying Smith and Dierking of his injury he was instructed to utilize Postal Service transportation to travel to Doctors Hospital for evaluation and treatment. McGuire Dep. at 35. McGuire refused, saying that he wanted to choose his own doctor. McGuire Dep. at 38. McGuire claims never to have provided Dierking or Smith with the name of his doctor. McGuire Dep. at 38. Plaintiff states that Dierking and Smith may have assumed that he meant Dr. Lanting, as he had been treated by Lanting on previous occasions, but that he has no knowledge as to whether they tried to contact him on this occasion. McGuire Dep. at 38. Refusing to go to Doctor's Hospital as instructed by Post Office personnel, McGuire called his daughter to come and pick him up. According to plaintiff, he was thereafter placed on suspension and ordered to leave the premises. McGuire Dep. at 60; Harkins Dec. at ¶ 6. He later travelled to New Jersey to see an orthopedic specialist.

### 3. Transfer to Clerk Craft.

According to the Arbitration decision of August 1985, plaintiff was to be reassigned to the clerk craft and awarded back pay retroactive to January 1984.

Defendant claims that the only clerk craft position that was available during the Summer or Fall of 1985 was that of "Distribution Clerk Machinery." Gardella Dec. at ¶ 3. Defendant alleges that a hiring freeze was in force at the Staten Island Post Office and affected all manual clerk positions throughout 1985. Id. Plaintiff contests defendant's allegation regarding a hiring freeze and further asserts that a hiring freeze would apply only to new hires and would not have prevented the transfer of an existing employee into the clerk craft. See Alexander Dec. at ¶¶ 3–4; Mazza Dec. at ¶ 2.

The Postal Service collective bargaining handbook entitled, "Qualification Standards Bargaining Unit Positions" mandates that all machine clerks—whose duties include operating a multi-position letter sorting machine—"demonstrate, in examination, operation of the [sorting] machine requiring an accuracy rate of 98% at prescribed sorting speeds." Consequently, the Postal Service sought to schedule McGuire for the machine clerk examination, in accordance with the Postal Service regulations. Gardella Dec. at ¶¶ 5–6. The Postal service first arranged for McGuire to sit for the machine clerk examination on October 16, 1985. Id. at ¶ 6. McGuire chose not to

take the exam on that day as he was travelling in Europe. McGuire Dep. at 46–47, 49. On November 7, 1985, the Postal Service again arranged for McGuire to sit for the test for the machine clerk position. Gardella Dec. at ¶ 7. McGuire again failed to sit for that examination, claiming that he was unable to sit for two hours due to his Postal Service injuries. *Id.;* McGuire Dep. at 52.

Plaintiff's machine clerk exam was rescheduled yet again by the Postal Service for late December 1985. Gardella Dec. at ¶ 8. The Postal Service, however, cancelled this examination because removal proceedings against McGuire had been commenced by the Postal Service allegedly as a result of unrelated acts of insubordination. *Id.* at ¶ 8.

McGuire alleges that he had already passed an examination for clerk/carrier, so that no other test was warranted. McGuire Aff. at ¶ 19. Moreover he claims that the arbitration award said nothing about taking a test. McGuire Dep. at 62. Finally, McGuire states, "There are people all around walking around the post office in Staten Island, they never took a test, they are clerks. Why should I be singled out to take this test?" *Id.* Plaintiff asserts that carriers who were injured on the job and could not perform their duties as carriers were regularly put in the clerk craft. *See* Mazza Dec. at ¶ 2; Alexander Dec. at ¶¶ 3–4.

## DISCUSSION

### A. *The Standard for Summary Judgment*

A party seeking summary judgment must demonstrate that "there is no genuine issue as to any material fact." Fed.R. Civ.P. 56(c); *Knight v. U.S. Fire Insurance Company,* 804 F.2d 9, 11 (2d Cir. 1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1986). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). It must establish that there is a "genuine issue for trial." *Id.* at 587, 106 S.Ct. at 1356. To create a genuine issue of fact "the party opposing the motion must set forth 'concrete particulars.'" *SEC v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir. 1978) (citation omitted). Thus, "[w]hen a motion for summary judgment is supported by depositions and affidavits, the party opposing the motion may not rest upon mere conclusory allegations or denials." *Theobald v. Botein, Hays, Sklar & Herzberg,* 493 F.Supp. 1, 5 (S.D.N.Y.1979).

"In considering the motion, the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight,* 804 F.2d at 11. The inquiry on a motion for summary judgment is thus the same as that on a motion for a directed verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986).

### B. *The Legal Standard to Be Applied in a Title VII Retaliation Suit.*

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* prohibits an employer from subjecting an employee to an adverse employment action in retaliation for that employee's opposition to allegedly discriminatory employment practices. Section 704(a) provides in relevant part that:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

The order and allocation of burden in retaliation cases follow that of the general Title VII disparate treatment analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973), and *Texas Dept of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Thus, to establish a Title VII retaliation claim, a plaintiff must demonstrate:

[1] protected participation or opposition under Title VII [that is] known by the alleged retaliator;

[2] an employment action or actions disadvantaging persons engaged in protected activities; and

[3] a causal connection between the first two elements; that is, a retaliatory motive playing a part in the adverse employment actions.

*Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 46 (2d Cir.1980).

■■■ A causal connection can be proved either directly or indirectly by showing that the protected activity is followed by adverse treatment. *See De Cintio v. Westchester County Medical Center*, 821 F.2d 111, 115 (2d Cir.1987), *cert. denied*, 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987); *Grant*, 622 F.2d at 46. Title VII is violated if a retaliatory motive played a part in the adverse action; it need not be the sole motivating factor. *See Grant*, 622 F.2d at 46; *Abel v. Bonfanti*, 625 F.Supp. 263, 268 (S.D.N.Y.1985).

Once plaintiff establishes a *prima facie* case, the defendant has the burden of production to "articulate some legitimate, nondiscriminatory reason" for its action. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. If defendant does so, the plaintiff has the burden of proof "to demonstrate that the proffered reason was not the true reason" for the decision: *i.e.*, that the articulated reason is a mere pretext. *Id.* at 259, 101 S.Ct. at 1096. The ultimate burden of persuasion, of course, remains with the plaintiff. *Id.* at 253, 101 S.Ct. at 1093.

These allocations of burdens of production and proof in retaliatory discharge cases are not meant to be rigid, mechanistic, or ritualistic. The critical question is whether a plaintiff has proven by a preponderance of the evidence that the defendant intentionally discriminated or retaliated against the plaintiff for engaging in protected activity.

*Wrighten v. Metropolitan Hospitals, Inc.*, 726 F.2d 1346, 1354 (9th Cir.1984); *United States Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983).

### C. *The CA–1 Form Incident*

■■■ Plaintiff McGuire fails to establish a *prima facie* case of retaliation with regard to the CA–1 Form incident. A *prima facie* case cannot be established by a plaintiff who cannot show that he was the victim of an adverse personnel decision.

There is no material factual dispute with respect to the Postal Service's nine-day delay in providing McGuire with Form CA–1. There is no dispute that McGuire participated in "protected activity" under Title VII by seeking EEO counseling in July and August 1985 and in filing an EEO complaint in August 1985. There is a dispute as to whether Safety Specialist James Dierking knew of McGuire's participation in these protected activities. This dispute, however, is not material, for even drawing all reasonable inferences in favor of the nonmoving party, as the Court must do on a motion for summary judgment, plaintiff nevertheless fails to address the fundamental flaw in his retaliation claim, namely that the alleged retaliatory act does not constitute an "adverse employment action" under Title VII.

McGuire has failed to adduce any facts or law that establish that a nine-day delay in providing him with a CA–1 claim form constitutes an "adverse employment action." An "adverse action," is one which affects "the terms, privileges, duration or conditions of the plaintiff's employment." *Rooney v. Witco Corp.*, 722 F.Supp. 1040, 1046 (S.D.N.Y.1989). The undisputed facts demonstrate that McGuire received and filed the form well within the prescribed time limit. Consequently, no adverse employment action, affecting the terms and

privileges of McGuire's employment, resulted from the Postal Service's hesitation in furnishing McGuire with a CA–1 Form. *See, e.g., Burrows v. Chemed Corp.*, 743 F.2d 612 (8th Cir.1984) (redesignation of job title and temporary grade reduction without reduction in pay held not adverse action); *Rooney v. Witco Corp.*, 722 F.Supp. 1040 (S.D.N.Y.1989) (five-day suspension in the payment of plaintiff's severance held not an "adverse action"); *Passer v. American Chemical Soc.*, 701 F.Supp. 1 (D.D.C. 1988) (cancellation of plaintiff's symposium held not an adverse action). McGuire's claim was ultimately rejected, not because it was untimely, but rather because, despite the OWCP's repeated requests for additional information, McGuire repeatedly failed to supply the medical data necessary to establish that the condition for which benefits were claimed was employment related. *See* Compensation Order Rejection of Claim Case No. A2–548104 dated December 11, 1985. Accordingly, Defendant's motion for summary judgment is granted with respect to the CA–1 Form incident.

## D.  *The September 12, 1985 Incident*

■ Plaintiff's claim of retaliatory discrimination based on the September 12, 1985 incident also founders on the legal requirements of Title VII. Plaintiff has failed to establish a *prima facie* case of retaliation. He offers no basis upon which this Court could find that an employer's insistence that an injured employee be taken immediately to an emergency room in a nearby hospital for treatment and evaluation constitutes an adverse employment action.

Although there are facts in dispute with regard to whether Safety Specialist Dierking had knowledge of McGuire's participation in EEO activities and whether reasonable attempts were made to contact plaintiff's doctor, they are not material facts which would preclude a finding of summary judgment with regard to the September 12, 1985 incident. Plaintiff has failed to show that Dierking's directive that

he be taken to Doctors Hospital for prompt evaluation and treatment following his injury adversely affected the terms and privileges of his employment. Moreover, McGuire fails to show that he was treated differently from employees who had not engaged in protected activity. Plaintiff, in fact, testified that "Everybody was sent to Doctors Hospital." McGuire Dep. at 34–35. Accordingly, Defendant's motion for summary judgment with respect to the September 12, 1985 incident is granted.

## E.  *Transfer to Clerk Craft*

■ With regard to McGuire's reassignment to the clerk craft, plaintiff has established a *prima facie* case of retaliation. Accordingly, defendant's motion for summary judgment with respect to the transfer to clerk craft is denied.

While neither McGuire nor declarants Alexander or Mazza dispute that the Postal Service handbook requires a potential machine clerk to perform satisfactorily on an examination to qualify for that position, such agreement does not dispose of plaintiff's retaliation claim with respect to defendant's failure to implement the arbitrator's August 1985 award. The initial inquiry concerns, rather, why a machine clerk position, and the requisite examination therefor, became McGuire's only transfer option. In her testimony before the ALJ, Ms. Roseanne Esposito, a supervisor at the Staten Island Post Office stated:

> If you're a carrier and you want to become a machine clerk, there is a qualifying examination, for a machine, for a test. If you were a carrier and you were going into a manual position, you would not have to take another test because it would be part of the same test.[2]

EEOC Hearing Transcript dated January 20, 1988 at 23. Plaintiff was a carrier at the time he requested transfer into the clerk craft. Therefore, it is necessary to determine whether McGuire took a test to become a carrier and whether that test is

---

**2.** Although Ms. Esposito's testimony is somewhat ambiguous, it appears from the context that the "same test" to which she refers is not the machine clerk examination but rather a general examination required of carriers and manual clerks.

the "same test" required of manual clerks. It is also important to determine whether, at the time he requested a transfer, there were, in fact, manual clerk positions available.

Defendant alleges that the only positions available at the time McGuire requested a transfer were machine clerk positions, because a hiring freeze affecting all manual clerk positions was in effect. Plaintiff contests the existence of a hiring freeze at the Staten Island Post Office and further asserts that a hiring freeze should not have had an effect on the transfer of an existing employee into the clerk craft. Defendant responds that Plaintiff's evidence contradicting the existence of an overall hiring freeze is irrelevant as the alleged hiring freeze was only in effect with respect to manual clerk positions. The existence of a hiring freeze and its nature is material to this case as it directly affected McGuire's transfer request. If no hiring freeze was in effect, the Postal Service has not shown why McGuire was not considered for a manual clerk position. Alternatively, assuming *arguendo* that a hiring freeze were in effect with respect to the manual clerk position, it is unclear whether such a freeze would affect the transfer of an existing employee. Declarants Alexander and Mazza have stated that carriers who are unable adequately to perform their duties as carriers, for whatever reason, are regularly made clerks despite hiring freezes. Alexander Dec. at ¶ 4; Mazza Dec. at ¶ 2.

McGuire asserts that he had "already past [sic] an examination for clerk/carrier." Defendant contests McGuire's allegation that he took and passed the clerk/carrier examination and asserts that McGuire has provided no documentary evidence to support his claim. There are thus disputed issues of material fact as to whether McGuire took a clerk/carrier examination when he was hired by the Post Office as a carrier in 1980, whether the same examination was given for manual clerk positions, whether there was a manual clerk position available in the Fall of 1985, whether there was a hiring freeze in effect at that time, and whether it would have applied to the transfer of existing employees to clerk positions.

Plaintiff raises an inference of a causal connection between the protected activity and the adverse employment decision. Proof of causal connection can be "established *indirectly* by showing that the protected activity was followed closely by discriminatory treatment, or through other evidence such as disparate treatment of fellow employees who engaged in similar conduct, or *directly* through evidence of retaliatory animus directed against a plaintiff by the defendant." *De Cintio v. Westchester County Medical Center*, 821 F.2d at 115 (citations omitted) (emphasis in original).

While McGuire may not be able to establish a sufficient causal link between the protected conduct and the adverse action to prevail in his Title VII action, the Court believes that the evidence of a causal link is sufficient to go to the jury. A reasonable jury could infer a causal link based upon the public nature of McGuire's EEO proceedings and the close temporal proximity of his involvement therein and the denial of his transfer request.

Defendant articulates a legitimate, nondiscriminatory reason for its actions. Defendants asserts that due to a hiring freeze affecting all manual clerk positions, McGuire was offered the only clerk position available, that of a machine clerk. Because Postal Service regulations require an examination for the position of machine clerk, McGuire was scheduled for two examinations for which he chose not to sit. Thus, the Postal Service asserts, McGuire's failure to be transferred was of his own doing.

At the summary judgment level, the Plaintiff does not have to prove that the reason put forth by the Defendant is pretextual. *Sorlucco v. New York City Police Department*, 888 F.2d 4, 7 (2d Cir. 1989). The Plaintiff may preclude summary judgment by producing evidence from which the trier of fact reasonably could draw an inference of discrimination. *See Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 898–99 (3d Cir.) *cert. dismissed*, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815

(1987). Plaintiff has borne the initial burden of offering evidence adequate to raise an inference of discrimination. As he contends, a jury might find that the Postal Service denied him a transfer to the clerk craft in retaliation for his filing of complaints with the EEOC. He has presented evidence sufficient to raise an inference of an indirect causal link in that the defendant failed to transfer him pursuant to the arbitrator's award just months after he began EEO proceedings. Drawing all evidentiary inferences in favor of the plaintiff, the Court concludes that the plaintiff may be able to prove retaliation on the part of the Postal Service in violation of Title VII. Accordingly, summary judgment on the Plaintiff's claim of retaliation with regard to the transfer to clerk craft is denied.

The Court does not suggest that McGuire's evidence of retaliatory treatment is strong or uncontradicted. Nevertheless, the Court cannot agree that the evidence is so weak that a reasonable jury could not return a verdict in McGuire's favor.

### F. *Damages*

■ Defendant asserts that even if the incident of which plaintiff complains could be deemed to constitute an act of reprisal, McGuire has failed to allege a cognizable basis for damages under Title VII. Title VII is equitable in nature and prohibits recovery of compensatory damages, damages for emotional distress, or punitive damages against federal employers. *See* 42 U.S.C. § 2000e–5(g); *Walker v. Ford Motor Co.*, 684 F.2d 1355, 1363 (11th Cir.1982); *Padway v. Palches*, 665 F.2d 965, 968 (9th Cir.1982); *Shah v. Mt. Zion Hospital and Medical Center*, 642 F.2d 268, 272 (9th Cir.1981); *De Grace v. Rumsfeld*, 614 F.2d 796, 808 (1st Cir.1980); *Narumanchi v. Board of Trustees, Connecticut State University*, 43 FEP Cases 815, 822, 1986 WL 15753 (D.Conn.1986), *rev'd in part on other grounds*, 850 F.2d 70 (2d Cir.1988); *Balsamo v. Alitalia Airlines*, 36 FEP Cases 314, 315 (D.Conn. 1982). Monetary recovery under Title VII is limited to back pay. Accordingly, defendant's motion for summary judgment with regard to plaintiff's compensatory and punitive damage claims is granted.

To be eligible for back pay, McGuire must demonstrate that he has suffered economic loss as the result of discrimination. The determination of whether to award back pay to a victorious plaintiff is separate from a determination of the claim on the merits. If plaintiff loses on the merits, the back pay issue never arises. If, however, plaintiff wins, he must still convince the trial court that the discrimination caused him economic injury. Such issues, however, are resolved subsequently to and separately from a determination of the merits.

### G. *Substitution of Parties*

■ Title VII of the Civil Rights Act of 1964, as amended, provides that a federal employee allegedly aggrieved by an act of employment discrimination may only file a civil action in which the "head of the department, agency, or unit, as appropriate, shall be the defendant." 42 U.S.C. § 2000e–16(c). Under Title VII the head of the national office is the only proper defendant. *See, e.g., Hancock v. Egger*, 848 F.2d 87, 88–89 (6th Cir.1988) (dismissing Title VII suit naming the Commissioner of the IRS as defendant rather than the Secretary of the Treasury).

Defendant argues that a Title VII lawsuit that does not name the proper party must be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) of Federal Rules of Civil Procedure. Certainly the case law would so indicate. *See, e.g. Hancock*, 848 F.2d at 88; *Morgan v. United States Postal Service*, 798 F.2d 1162, 1165 n. 3 (8th Cir.1986), *cert. denied*, 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987); *Ellis v. United States Postal Service*, 784 F.2d 835, 838 (7th Cir.1986); *Drayton v. Veterans Administration*, 654 F.Supp. 558, 562 (S.D.N.Y.1987); *Stewart v. United States Postal Service*, 649 F.Supp. 1531, 1533 (S.D.N.Y.1986). Such case law, however, is inapposite to the present case.

Although plaintiff, who, at the time of the filing of the initial complaint appeared *pro se*, did not initially name or serve the proper party defendant, he was later granted leave to amend his complaint to name the Postmaster General as the sole defendant. Shortly thereafter plaintiff retained legal counsel to represent him in the present matter. Counsel filed an amended and a second amended complaint on behalf of plaintiff in this action. Plaintiff's attorneys, relying on the initial complaint, inadvertently copied the caption of the action as initially filed, thereby omitting the only properly named defendant. However, the body of the second amended complaint contains the necessary allegations against the Postmaster General, and the Court believes that the obviously inadvertent omission from the caption, however deplorable such carelessness may be, should not require dismissal of the action and possible loss of a valuable claim.

Leave to amend a complaint "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). It is clear that plaintiff can cure the deficiency in the complaint simply by renaming the Postmaster General as the party defendant. In *Schiavone v. Fortune*, 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986), the Supreme Court held that in order for an amendment changing the defendant to relate back to the date of the original pleading, the party to be brought in must have received notice of the action within the statute of limitations period. Here, defendant has acknowledged that the Postal Service was served within the period of limitations, though not in the name of the Postmaster General but, rather, in the name of the Postal Service. Accordingly, there was proper notice to the Postal Service which, this Court believes, should be imputed to the Postmaster General. It is well settled that the limitations period is not a bar if the added defendant has had sufficient notice of the institution of the action, whether formal or informal, within the limitations period or if a sufficient identity of interest exists between the new defendant and the original one so that relation back would not be prejudicial. Hence, the Court allowed Plaintiff to

amend his complaint to name the Postmaster General as the only defendant. As the Postmaster General has received timely notice of the institution of the action against him, is already before this court, and will not be prejudiced in maintaining a defense on the merits, the Court will allow the plaintiff to recaption the action and substitute, *nunc pro tunc*, the Postmaster General as the only named defendant.

### H. *The January 1986 Termination*

Under the doctrine of sovereign immunity, McGuire is jurisdictionally barred from litigating, in this lawsuit, additional acts of alleged discrimination that he previously failed to raise during three years of EEO administrative proceedings, and which do not reasonably relate to his EEO charges. As a result, McGuire's federal lawsuit may not include his January 1986 termination, which he unsuccessfully challenged only through available labor grievance procedures. Accordingly, defendant's motion for summary judgment is granted with respect to plaintiff's claim of discriminatory discharge.

The United States, as sovereign, enjoys a general immunity from suit and may only be sued to the extent that it has waived its immunity. Indeed, the terms of the United States' consent to suit define a court's jurisdiction to entertain that suit. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980); *United States v. Orleans*, 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976); *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); *Huntington Towers, Ltd. v. Franklin National Bank*, 559 F.2d 863, 870 (2d Cir.1977), *cert. denied*, 434 U.S. 1012, 98 S.Ct. 726, 54 L.Ed.2d 756 (1978). Any "limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Soriano v. United States*, 352 U.S. 270, 276, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957). *See also Honda v. Clark*, 386 U.S. 484, 87 S.Ct. 1188, 18 L.Ed.2d 244 (1967).

The Government's amenability to suit for alleged employment discrimination based

on retaliation is defined by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* That statute, upon which McGuire relies exclusively in this lawsuit, sets forth the specific remedies available against the federal government in discrimination cases. *See* 42 U.S.C. § 2000e–16. Title VII provides "an exclusive pre-emptive administrative and judicial scheme for the redress of federal employment discrimination." *Brown v. General Services Administration,* 425 U.S. 820, 829, 96 S.Ct. 1961, 1966, 48 L.Ed.2d 402 (1976). *See also Davis v. Passman,* 442 U.S. 228, 247 n. 26, 99 S.Ct. 2264, 2278 n. 26, 60 L.Ed.2d 846 (1979); *Davis v. Califano,* 613 F.2d 957, 958 n. 1 (D.C.Cir.1979); *Scott v. Perry,* 569 F.2d 1064 (9th Cir.1978).

██ Integral to the scheme set forth in Title VII is the principle that a complainant must fully exhaust his administrative remedies *prior* to filing a court action. *Brown v. General Services Administration,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976); *Hoffman v. Boeing,* 596 F.2d 683, 685 (5th Cir.1979); *Scott v. Perry,* 569 F.2d 1064, 1065–66 (9th Cir.1978); *Ettinger v. Johnson,* 556 F.2d 692 (3d Cir.1977); *Swain v. Hoffman,* 547 F.2d 921 (5th Cir. 1977). The filing of a charge with the EEOC by an aggrieved party and the receipt of a notice of the right to sue are jurisdictional prerequisites to a civil action under Title VII. 42 U.S.C. §§ 2000e–5(e), 2000e–5(f); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The statutorily imposed filing requirement serves to vest in the federal agencies "primary responsibility" for maintaining non-discrimination in employment. *See Kizas v. Webster,* 707 F.2d 524, 544 (D.C.Cir.1983), *cert. denied,* 464 U.S. 1042, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984).

██ The requirement that available administrative remedies be exhausted before federal district court litigation is commenced applies similarly to claims that arise after a federal employee has begun to exhaust administrative remedies with respect to prior discrimination complaints. Thus, while the courts do not insist upon precise identity of the claims raised administratively and those pursued in subsequent litigation:

> The absence of a perfect 'fit' between the administrative charge and the judicial complaint is ... not fatal to judicial review if the policies of promoting conciliation and avoiding bypass of the administrative process have been served.... Allowing a federal court complaint to proceed despite its loose 'fit' with the administrative charge and investigation, however, is precluded if it would circumvent the Title VII scheme which contemplates agency efforts to secure voluntary compliance before a civil action is instituted.

*Ong v. Cleland,* 642 F.2d 316, 319 (9th Cir.1981) (citations omitted) (plaintiff's administrative charge of discrimination in promotion held not to encompass her subsequently filed judicial complaint that she was "constructively discharged" by a discriminatory promotional decision by the agency).

The proper "fit" between the claims raised judicially and those raised earlier in EEO administrative proceedings has been articulated by the Fifth Circuit in *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455 (5th Cir.1970): the scope of the charges of employment discrimination in a judicial complaint is limited to the scope of the prior EEOC or administrative investigation "which can *reasonably be expected* to grow out of the charge of discrimination" filed administratively. *Sanchez v. Standard Brands, Inc.* 431 F.2d at 466 (emphasis added). "Judicial claims which serve to amplify, clarify, or more clearly focus earlier EEO complaints are appropriate. Allegations of new acts of discrimination, offered as the essential basis for the requested judicial review are not appropriate." *Ray v. Freeman,* 626 F.2d 439, 443 (5th Cir.1980), *cert. denied,* 450 U.S. 997, 101 S.Ct. 1701, 68 L.Ed.2d 198 (1981) (citation omitted).

In *Sanchez,* the Fifth Circuit discussed its rationale for this rule:

> A charge of discrimination is *not* filed as a preliminary to a lawsuit. On the con-

trary, the purpose of a charge of discrimination is to trigger the investigatory and conciliatory procedures of the EEOC. Once a charge has been filed, the Commission carries out its investigatory function and attempts to obtain voluntary compliance with the law. Only if the EEOC *fails* to achieve voluntary compliance will the matter ever become the subject of court action.

431 F.2d at 466 (emphasis in original). To permit a federal employee to raise for the first time in this Court charges of employment discrimination that do not reasonably relate to the initial charges of discrimination which the employee pursued administratively would thwart the entire scheme for the efficient and timely adjudication of employment disputes.

A review of the charges previously asserted by McGuire and considered by the EEOC reveals that McGuire's claims of discrimination concerned incidents that not only were wholly unrelated to, but also occurred many months before his January 1986 dismissal, to wit: the August 1985 CA–1 injury claim form incident, the implementation of the August 1985 arbitration award, and the September 1985 back injury incident. The exhaustive EEOC record confirms that McGuire made no effort to raise his dismissal as an act of retaliation. Despite the Commission's remand of McGuire's charges of reprisal discrimination to the agency for further investigation and refinement in October 1986, and notwithstanding that this further investigation occurred well after his dismissal, McGuire never raised his dismissal as one of the alleged acts of retaliation. Nor did McGuire challenge the agency's written statement setting forth his charges of employment discrimination which made no mention of his dismissal. *See* EEO Report of Investigation dated December 18, 1986.

It was only upon the filing of his Amended Complaint on December 29, 1988, that McGuire first chose to assert that the Postal Service discharged him in January 1986 in retaliation for his participation in EEO activities in July and August 1985.

Plaintiff seeks to assert in this lawsuit that his termination in January 1986 is directly related to his previous allegations of discrimination. The record refutes this contention. Moreover, McGuire's repeated assertion that the record demonstrates that he was precluded from raising this claim is without factual basis. McGuire focuses specific blame on the ALJ for allegedly barring McGuire from raising his dismissal. McGuire contends that, in limiting the issues before him, the ALJ refused to consider plaintiff's September 12, 1985 back injury from which, plaintiff alleges, the subsequent insubordination charges resulted. This Court cannot agree that McGuire's charge of discriminatory discharge is a reasonable outgrowth of the allegations in his EEOC complaint regarding the September 12 incident. The insubordination charges for which McGuire was terminated concern his repeated failure, despite explicit oral and written instructions from Postal Service supervisors: (1) to appear for medical examinations that were to be conducted by Dr. J.V. Pennino; and (2) to have his own physician submit medical forms describing McGuire's alleged medical problems. The grounds for McGuire's dismissal, as expressly set forth in the "Notice of Removal" and "Letter of Decision," neither concern nor mention the incident of September 12, 1985, which McGuire contends forms the basis for his termination for insubordination.

Because nothing in the record of McGuire's proceedings before the EEOC suggests that McGuire ever previously contended that his January 1986 dismissal constituted retaliation, and because that claim does not reasonably relate to the claims raised by McGuire administratively, McGuire's claim of discriminatory discharge must be dismissed for lack of jurisdiction.

### CONCLUSION

For the reasons set forth above, summary judgment is granted with respect to plaintiff's claims of discriminatory discharge and with respect to the CA–1 Form incident and the September 12, 1985 incident, as well as the claims for compensato-

ry and punitive damages. Summary judgment is denied with respect to plaintiff's claim of retaliation deriving from defendant's failure to implement the August 1985 arbitration award.

SO ORDERED.