Michael JOHNSON, Plaintiff,

v.

Anthony M. FRANK, Postmaster General of the United States, Defendant.

No. 91 Civ. 0811 (CBM).

United States District Court, S.D. New York.

Aug. 12, 1993.

Sandra Helbig, West Orange, NJ, for plaintiff.

Mary Jo White, U.S. Atty. (Lisa A. Jonas, G. Elaine Wood, Asst. U.S. Attys., of counsel), for defendant.

## OPINION ON MOTIONS FOR SUMMARY JUDGMENT

MOTLEY, District Judge.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

## I. THE PLAINTIFF AND HIS CLAIM

Plaintiff Johnson is an African–American employee of the United States Postal Service in New York City. From October 1980 until September 1987 his title was Supervisor, Elevator Mechanics, EAS–16. Plaintiff was not promoted after October of 1980. In September of 1987 plaintiff's position was abolished. Plaintiff complains that he was the victim of racially motivated employment discrimination. The foundation of this complaint is plaintiff's failure to receive certain promotions that form the basis of this suit.

Plaintiff alleges that he formally applied for or in other ways expressed his interest in various vacant positions in the Postal Service dating back to 1987, none of which he received. When grouped according to the dates that he expressed interest in the positions in question, Johnson's claims fall rather neatly into four categories:

### A. The Pre–Complaint Positions

Plaintiff alleges job discrimination on the basis of seven positions dating back to 1987,[1] denominated in accordance with Postal Ser-

vice regulations as VAN 2073, VAN 2141, VAN 2155, VAN 8016, VAN 2292, VAN 10669, and VAN 2246.[2] Defendant argues that Johnson's discrimination claims are legally barred in regard to these positions since he failed to timely file administrative claims as required by law for these positions.

### B. VAN 2267—The Subject of the Equal Opportunity Complaint

Johnson applied for but did not receive the position denominated VAN 2267. Defendant argues that plaintiff duly filed and entered into a settlement of this claim.

### C. The Post–Complaint Positions

In October and November of 1989, and in July and October of 1990, Johnson applied for but was not awarded three promotions and one lateral reassignment. Defendant argues that plaintiff did not file administrative claims claiming discrimination for these incidents and thus is barred from bringing this action in regard to those positions.

### D. Retaliation

Johnson claims adverse actions in retaliation for his filing of discrimination claims. Defendant argues that plaintiff has no cause of action because no adverse effects were suffered by plaintiff.

Defendant has moved for summary judgment, arguing that plaintiff's case should be dismissed. Plaintiff has responded and has styled his responsive papers as both an answer to the Government's motion for summary judgment as well as a cross-motion for summary judgment on plaintiff's claims.

Pursuant to Local Rule 3(g) defendant has listed the material facts which the Government believes entitle it to summary judgment. Plaintiff originally failed to comply with the mandate of Rule 3(g). Plaintiff

---

**1.** Plaintiff's briefs, paragons of incoherence and turbidity, have at various times and in various places offered different positions which it is claimed were wrongfully denied to plaintiff. The following list, a more inclusive one than that presented by plaintiff's latest submission, Plaintiff's Summary Judgment Brief at 4, is from the Government's Memorandum in Support of Defendant's Motion for Summary Judgment at 4.

This list is the one supported by the evidence and prior pleadings in this case as the most accurate list of positions for which plaintiff applied or otherwise expressed interest in obtaining.

**2.** Apparently an open position is announced pursuant to Postal Service regulations in the form of a *V*acancy *A*nnouncement *N*umber, or VAN.

failed to dispute the Government's Rule 3(g) Statement. In his own Rule 3(g) Statement plaintiff merely listed the exhibit numbers of the various documents in the case with the claim that these contain facts that "are not controverted," without ever enumerating what exactly those facts were. Local Rule 3(g) states that any motion for summary judgment must have annexed a "short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement constitutes grounds for denial of the motion." Plaintiff was ordered to resubmit his Rule 3(g) Statement and has since done so, albeit in a muddled and barely comprehensible fashion. After a close and careful review of the record, the court is convinced that the undisputable facts clearly mandate granting defendant's motion for summary judgment and dismissing this case.

## II. THE JOBS IN QUESTION

Pursuant to Postal Service regulations, applications for vacant jobs were reviewed by a Promotion Review Committee, whose job was to recommend the best qualified candidate to a Selecting Official who would make the final selection. (Defendant's Rule 3(g) Statement, ¶ 4). For many of the positions desired by plaintiff, the Promotion Review Committee did not even forward plaintiff's name to the Selecting Official but forwarded another applicant's name instead. At many points, the members of the Promotion Review Committee were themselves African–Americans (See Ex. J–2). Guy Miata was the Selecting Official for all of the jobs in question.

As far as can be determined by the oft-times contradictory and inconsistent documents submitted by plaintiff, the following list appears to be uncontroverted. Plaintiff applied for or desired the following jobs during his tenure with the Postal Service:

### A. VAN 2044

Around February of 1987 plaintiff applied for the position of Maintenance Program Specialist, EAS–19, VAN 2044. Miata selected Clarence Holloway, an African–American, instead.

### B. VAN 2073

Around April 1987 plaintiff submitted an application for Superintendent, Maintenance (B), EAS–19, VAN 2073. He was interviewed in June. He did not receive the job; Peter Lieto did.

### C. VAN 2141

Around November of 1987 plaintiff requested to be considered non-competitively for Supervisor, Maintenance, Detached Units, EAS–16, VAN 2141. In December of 1987 plaintiff submitted an application. While John Uske was recommended by the selection committee, no one was appointed, and the position reposted and opened to applicants in a larger geographic area.

### D. VAN 2155

Around January 4, 1988 plaintiff applied for Superintendent Maintenance (A), EAS–17, VAN 2155, but was never interviewed. The position was split into two positions and thus no one was selected for VAN 2155.

### E. VAN 8016

Around February of 1988 a vacancy was posted for Supervisor, Maintenance, Detached Units, VAN 8016. In March of 1988 plaintiff submitted an application for the position. He was interviewed in April of 1988 but was not selected. Peter Weeks and Thomas Ragiola were selected instead.

### F. VAN 10669

Between September and November of 1988 plaintiff submitted an application for Superintendent Building and Equipment Maintenance (A), EAS–17, VAN 10669. Thomas Ragiola was awarded the position.

### G. VAN 2246

A vacancy was posted for the position of Maintenance, Improvement Officer, EAS–17, VAN 2246, around October of 1988. In October plaintiff submitted an application for that position.

Plaintiff did not seek counselling with the Postal Service Office of Equal Employment Opportunity ("EEO") within 30 calendar

days or file an EEO complaint within 30 days of not being selected for the above positions.

## H. VAN 2267

Around January of 1989 a vacancy was posted for Supervisor, Maintenance, Detached Units, EAS–16, VAN 2267. Plaintiff's January request that he be considered non-competitively for that position was denied. In March of 1989 plaintiff submitted an application. Ping Chu received the position. Plaintiff's failure to receive this position constituted the subject of his EEO complaint.

## I. VAN 2292

Around May of 1989 a vacancy was posted for Maintenance Program Specialist, EAS–19, VAN 2292. In May plaintiff submitted an application for this position. He was not hired. Susan Schoer received the position. Plaintiff did not seek EEO counselling within 30 calendar days of not being selected for VAN 2292. Plaintiff did not file an EEO complaint with respect to not being selected for VAN 2292.

## J. VAN 2333

Around September 19, 1989, plaintiff submitted an application for position of Superintendent, Building & Equipment Maintenance (B), EAS–18, VAN 2333. He was interviewed in November of 1989. Howard Huie received the position. Plaintiff did not seek EEO counselling within 30 calendar days of not being selected for VAN 2333. Plaintiff did not file an EEO complaint with respect to not being selected for VAN 2333.

## K. VAN 2343

Around October of 1989 plaintiff submitted an application for position of Superintendent, Maintenance (B), EAS–19, VAN 2343. The position was withdrawn before anyone was selected. (Lederman Decl. ¶ 5). Plaintiff did not seek EEO counselling within 30 calendar days of not being selected for VAN 2343. Plaintiff did not file an EEO complaint with respect to not being selected for VAN 2343.

## L. VAN 3000

In 1990 a vacancy was posted for Superintendent Building Equipment Maintenance, EAS–17. Plaintiff did not apply, contending that he was too discouraged to do so. Lamkit Kwong was appointed. Plaintiff did not seek EEO counselling within 30 calendar days of not being selected for VAN 3000. Plaintiff did not file an EEO complaint with respect to not being selected for VAN 3000.

## M. VAN 3031

In late July of 1990 the position of Supervisor, Maintenance, Detached Units, EAS–16, VAN 3031, became vacant. Plaintiff requested assignment to it, but Domingo Martinez was appointed instead. Plaintiff did not submit a formal application for the position. Plaintiff did not seek EEO counselling within 30 calendar days of not being selected for VAN 3031. Plaintiff did not file an EEO complaint with respect to not being selected for VAN 3031.

## III. LEGAL ANALYSIS

### A. Summary Judgment Standard

■ "When a motion for summary judgment is made, and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits, or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Plaintiff here has failed to set forth specific facts demonstrating the existence of a genuine material dispute. A Title VII plaintiff cannot "defeat a motion for summary judgment by offering purely conclusory allegations of discrimination." *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.), cert. den. 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985).

■ In order to survive the Postal Service's summary judgment motion, plaintiff must establish a prima facie case of discrimination. If the evidence assembled by the Government in support of its motion supports the assertion that the actions complained of were nondiscriminatory and plaintiff fails to demonstrate in rebuttal a material

question of fact as to these nondiscriminatory reasons, then summary judgment is appropriate. See, e.g. *Simmons v. Tisch*, 731 F.Supp. 1286, 1288 (E.D.Va.1988).

## B. The Pre–Complaint Positions

Plaintiff did not submit timely complaints alleging discrimination in reference to VAN 2044, VAN 2073, VAN 2141, VAN 2155, VAN 8016, VAN 2292, VAN 10669, and VAN 2246. Each of these positions was filled after the Promotion Review Committee reviewed the applications and forwarded its recommended candidates to Miata. Only with reference to VAN 2073 was Johnson's name so forwarded. In each instance, plaintiff failed to report any allegation of discrimination or file a formal administrative complaint. (Sturman Decl. ¶ 13, attached to Defendant's Rule 3(g) Statement).

Plaintiff argues that his May 1989 Equal Employment Opportunity complaint, alleging discrimination as to VAN 2267, included the prior acts of alleged discrimination. (See Plaintiff's Summary Judgment Brief at 61). Attached to this complaint were references to plaintiff's not getting the positions he applied for prior to his application for VAN 2267. However, the crux of plaintiff's complaint was that he did not receive the position advertised as VAN 2267. The attachment, dated May 1, 1989, was accompanied by a handwritten signed statement by plaintiff, dated June 12, 1989, referring to the May 1, 1989 attachment. In it Johnson stated: "I understand and am not complaining about items 1 through 11 as individual complaints, but rather my purpose for providing this information is to demonstrate the series of events which preceded the actual discriminatorial event resulting in my nonselection for the position of Sup[ervisor] Maint[enance] of Detached Units." (Ex J–7 in Support of Defendant's Motion for Summary Judgment).

A further analysis of the EEO complaint clearly demonstrates that it was limited to VAN 2267. Plaintiff was notified that the EEO complaint was limited to VAN 2267 and such limitation was never protested or challenged by plaintiff during the complaint and resolution process.

Title VII is the sole remedial scheme available to plaintiffs claiming discrimination in federal employment. *Brown v. General Services Administration*, 425 U.S. 820, 829, 96 S.Ct. 1961, 1966, 48 L.Ed.2d 402, 409 (1976). Attached to the right to sue in federal court under Title VII is the requirement that "the complainant must seek relief in the agency that has allegedly discriminated against him." *Brown*, 425 U.S. at 832, 96 S.Ct. at 1967, 48 L.Ed.2d at 411; *Stewart v. United States Immigration & Naturalization Service*, 762 F.2d 193, 197 (2d Cir.1985). "Integral to the scheme set forth in Title VII is the principle that a complainant must fully exhaust his administrative remedies *prior* to filing a court action." *McGuire v. United States Postal Service*, 749 F.Supp. 1275, 1287 (S.D.N.Y.1990) (emphasis in original).

Plaintiff here never sought to administratively remedy the discrimination he alleges led to his not receiving the above positions. (Sturman Decl. ¶ 13; Johnson Deposition of April 9, April 16, April 23, and April 23, 1992, at 115–17, 123–28, 132, 203–05 ("Johnson Dep.")). While under certain circumstances one need not exhaust one's administrative remedies, one must in cases like the one at bar at least invoke them. Plaintiff here has done neither. There has been no allegation, no evidence, that plaintiff was unaware of the 30–day deadline. (Sturman Decl. ¶ 15, Exs. J–7, J–15).

Plaintiff cites to this court's recent decision in *Scelsa v. City University of New York*, 806 F.Supp. 1126 (S.D.N.Y.1992), to bolster his claim that he need not first have invoked his administrative remedies to be able to seek recourse in federal district court under Title VII. The decision in *Scelsa* is legally and factually distinguishable. In *Scelsa*, plaintiff was only given two days notice of the threatened discrimination, so that administrative recourse would have been futile. Plaintiff thus sought an immediate temporary restraining order and then obtained a preliminary injunction.

In contrast, plaintiff in the instant case has presented no evidence whatsoever that he would have suffered irreparable harm if forced to utilize Title VII's administrative scheme. See *Scelsa*, 806 F.Supp. at 1139.

Additionally, in *Scelsa* plaintiff sought only equitable relief, another factor that renders plaintiff's reliance on that case inappropriate.

■ The administrative remedial scheme of Title VII requires that a "federal employee who seeks to file a court action based on Title VII must first exhaust available administrative remedies, as set forth in Section 717 and 29 C.F.R. § 1616.211 et seq." *Royall v. United States Postal Service*, 624 F.Supp. 211, 213 (E.D.N.Y.1985). The right to bring a court action regarding equal employment in the federal government is predicated on the timely exhaustion of these remedies. *Benford v. Frank*, 943 F.2d 609, 611 (6th Cir. 1991).

Equal Employment Opportunity Commission ("EEOC") regulations establish a thirty-day time period in which to complain of discrimination in the federal employment context. 29 C.F.R. § 1613.214(a)(1)(i). 29 C.F.R. § 1613.214(a)(4) allows the agency "to extend the time limits in this section when the complainant shows that he/she was not notified of the time limits and was not otherwise aware of them, was prevented by circumstances beyond the complainant's control from submitting the matter within the time limits; or for other reasons considered sufficient by the agency." Plaintiff fails to present a convincing (or even plausible) reason to bolster his claim that he should be allowed to present his claims under this provision.

In the first place, the EEO has previously found that there were no reasons sufficient to allow Johnson to seek redress in regard to the above positions and, accordingly, limited the scope of his complaint to VAN 2267. Secondly, there has been no showing that any extension would be warranted here.

There has been no showing, no evidence presented by plaintiff, that he was unaware of the deadlines. There is no assertion that Johnson was prevented from filing a timely complaint. Uncontroverted evidence shows that at all times relevant to this action all facilities in which plaintiff worked were, like all federal buildings, blanketed by posters detailing the Equal Employment Opportunity rights and responsibilities of federal Postal Service Employees. (Ex. J–1 in Support of Defendant's Motion; Sturman Decl. ¶ 15). Plaintiff does not dispute that all Postal Service Employees were adequately informed of their Equal Opportunity rights. Plaintiff thus was or should have been aware of his rights and responsibilities under Title VII. Plaintiff, himself, admitted that he "was fully familiar with all of the Post Office building facilities." (Certification of Plaintiff, ¶ 2).

■ Incidents never reported due to the failure to act within the 30–day time limit cannot be presented at trial. See, e.g. *Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 23 (2d Cir.), cert. den. 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985). In the Second Circuit the 30–day rule is considered jurisdictional, and thus failure to adhere to it deprives the District Court of subject-matter jurisdiction. See *Belton v. United States Postal Service*, 740 F.Supp. 269 (S.D.N.Y. 1990) (collecting cases).

■ Plaintiff contends that his failure to even invoke the administrative remedies of Title VII should not bar the present action because the United States Postal Service Equal Employment Opportunity Office is so corrupt and deceitful that it cannot be trusted to act fairly on his behalf.[3] Plaintiff has, however, presented no facts on this claim— only unsubstantiated allegations and accusations. In order to escape the imposition of summary judgment, plaintiff must demonstrate the existence of a disputed fact. Plaintiff has presented no credible evidence that would excuse his failure to adhere to the remedial scheme of Title VII. Absent such evidence, a conclusion by this court that the federal agencies designed to administratively handle employee discrimination claims are

---

**3.** Or, as plaintiff so grandiloquently puts it, "Plaintiff herein has been flimflammed into waiving the hearing procedure and received nothing in return but recourse to a brick wall." (Plaintiff's Summary Judgment Brief at 59). While this is somewhat incoherent, it appears that what plaintiff is attempting to do is claim that failure to adhere to the administrative requirements to Title VII's remedial scheme is excusable because the governments administrative mechanisms are corrupt and valueless. (See Plaintiff's Summary Judgment Brief at 50–51, 59, 85).

**1150**

worthless and corrupt is unwarranted. Because plaintiff has presented no factual dispute as to the adequacy of the administrative scheme, his failure to even invoke his administrative remedies is inexcusable. *J.G. v. Board of Education*, 830 F.2d 444, 447 (2d Cir.1987).

### PLAINTIFF HAS FAILED TO DEMONSTRATE THE EXISTENCE OF A CONTINUING VIOLATION

▬▬▬▬ Invocation of the continuing violation theory is inapposite here. This doctrine, which carves out an exception to the exhaustion requirement, applies when the discriminatory employment practice manifests itself as a series of related acts over time, rather than as a series of discrete acts. A party cannot evade the statute of limitations merely by characterizing a completed act of discrimination as a continuing violation. Serial decisions not to promote do not in themselves give rise to a continuing violation. *La Beach v. Nestle Co.*, 658 F.Supp. 676, 687 (S.D.N.Y. 1987). Plaintiff has failed to present any evidence that there is either a related series of acts or the maintenance of a discriminatory system which would favor the allowance of a continuing violation theory. *La Beach*, 658 F.Supp. at 686. The uncontroverted fact that the membership of the Promotion Review Committee included members of plaintiff's own group renders even more untenable any possible claim that there was a discriminatory system in place. (Ex. J–1 to Defendant's Memorandum).

The continuing violation theory is disfavored in the Second Circuit, see e.g. *Blesedell v. Mobil Oil Co.*, 708 F.Supp. 1408, 1415 (S.D.N.Y.1989) (collecting cases), and courts in this Circuit have repeatedly ruled that multiple failures to promote do not amount to a continuing violation. Id. "A plaintiff may not simply characterize a discrete act of discrimination as ongoing in order to circumvent stringent time limits." *Gilliard v. N.Y. Public Library System*, 597 F.Supp. 1069, 1077 (S.D.N.Y.1984). The cases cited by plaintiff, such as *Abrams v. Baylor College of Medicine*, 805 F.2d 528 (5th Cir.1986), are clearly limited to the Circuits in which they were decided. This court sits in the Second Circuit and while cases from other jurisdictions may be informative and even persuasive they are not controlling. Plaintiff has presented no Second Circuit cases on this issue. Second Circuit case law reveals quite clearly that no continuing violation claim is well-founded in the instant case.

### C. The EEO Complaint Concerning VAN 2267 And Its Resolution

In May of 1989 plaintiff requested EEO counselling and met with the EEO Counselor and Investigator, Betty Collins. Collins informed plaintiff that pursuant to EEOC regulations unreported acts of discrimination which were more than 30 days old were untimely. (Collins Dep. I at 15, 20, 32; Johnson Dep. at 57–60).

Plaintiff states that he filed a request May 1, 1989, based on the failure to appoint him to VAN 2267, also alleging a continuous history of discrimination (See Ex. G–B, Johnson's list of allegedly discriminatory promotion denials, attached to plaintiff's original complaint with the EEO counselor).

In early June of 1989, after Collins investigated the incident, plaintiff was permitted to file a formal complaint which he did on June 12, 1989. (Ex. G–C in Support of Defendant's Motion for Summary Judgment). Mr. Sturman, the manager of the United States Postal Service Equal Employment Opportunity Office, enforced the thirty-day limit and did not recognize plaintiff's claim of continuous discrimination. He limited the complaint to VAN 2267. Plaintiff in the complaint cited as the discriminatory incident the denial of his request for a lateral transfer to VAN 2267 noncompetitively and his not being selected for VAN 2267. He attached a letter with the formal complaint stating that the information concerning other vacancies was submitted only as background and did not form the basis of his complaint. (Ex. J–7 in Support of Defendant's Motion for Summary Judgment). Indeed, after the resolution process had concluded, plaintiff wrote to Sturman "that the initiation of my case dated 5/1/89 was based on vacancy # 2267, EAS–16, the bases of that, is the past elements, though not the issue, but to show a trend of denial of my rights under the U.S.P.S. Equal

Rights Opportunity." (Johnson Letter to Sturman of Dec. 14, 1989, Ex. J–15 in Support of Defendant's Motion for Summary Judgment).

Plaintiff's complaint was acknowledged by letter dated June 26, 1989, defining the issue in question as plaintiff not being selected for VAN 2267. The letter informed plaintiff that if he objected to the definition of the issue, he had seven calendar days from receipt to object. (Ex. G–EEEE in Support of Defendant's Motion for Summary Judgment). There was no objection. (Sturman Decl. ¶ 8).

Collins met with Johnson in September of 1989 pursuant to EEO regulations to discuss the possibility of settling the dispute. (Collins Dep. of Apr. 7, 1991, at 45). Plaintiff's original request for relief stated: "My only retribution is that I be considered for higher level positions based on my documented experience, and background and training." (Plaintiff's Equal Employment Opportunity Investigative Affidavit of Aug. 29, 1989, Ex. G–III at 4). Collins told plaintiff that he could incorporate the relief he sought in the language of the Formal Complaint Resolution Agreement. (Collins Dep. of Apr. 7, 1991, at 34, 36–37, 43–44). Plaintiff agreed to do so.

Plaintiff withdrew his complaint and signed an agreement resolving it. Plaintiff incorporated into this agreement the relief he desired by dictating the terms on which he would voluntarily withdraw his complaint. Thus, the Formal Complaint Resolution Agreement, dated September 12, 1989, stated that plaintiff's withdrawal of the complaint was accompanied by the understanding that "predicated upon my documented experience, background, and training I will be considered for: 1. higher level positions; and 2. coverage of details in maintenance." (Ex. J–8 in Support of Defendant's Motion for Summary Judgment).

Collins met with Miata who agree to the above terms and signed the agreement on August 31, 1989. (Ex. J–8, G–BB, Collins Dep. of Apr. 7, 1991, 44–45; Miata Dep. of April 2 and 3, 1992, 29–36). Plaintiff read the agreement before he signed it and withdrew his complaint (Johnson Dep. at 226).

Plaintiff contends his understanding was that the agreement mandated that he receive a promotion. His basis for that understanding was apparently the demeanor and carriage of Sturman, the EEO New York Division Manager. Plaintiff testified that Sturman's "character, the way he carried himself" led him to "believe that everything was going to be all right." (Johnson Dep. at 229). However, in his deposition testimony when he was asked if anyone guaranteed him a promotion, Johnson responded that "you can't guarantee promotions to nobody." (Id. at 243).

Defendant contends, correctly, that this provided plaintiff with a benefit in that he would be considered for details in maintenance which he would not otherwise receive. "Without this promise, the Postal Service had no obligation to initiate a search to identify the temporary 'detail' assignment that Johnson refused or the Level–16 reassignment that he accepted on December 22, 1989." (Defendant's Memorandum of Law in Support of Its Motion for Summary Judgment, 24). As defendant notes, this consideration amounts to the bargained-for terms articulated by the plaintiff.

The law favors settlement and conciliation of civil rights litigation. "To allow claimants ... to continue to pursue claims that have been fully remedied during the administrative process would frustrate the congressional policy favoring administrative resolution of complaints." *Wrenn v. Secretary, Dept. of Veterans Affairs*, 918 F.2d 1073, 1078 (2d Cir.1990), cert. den. —— U.S. ——, 111 S.Ct. 1625, 113 L.Ed.2d 721 (1991). An aggrieved employee who voluntarily settles a claim waives his right to bring a subsequent employment discrimination suit based on the same fact situation. See, e.g., *Wilmes v. United States Postal Service*, 810 F.2d 130, 132 (7th Cir.1987). This policy favoring settlement applies with even greater force here, where the claim was settled on terms proposed by plaintiff himself.

In late October, 1989, almost immediately after signing the Complaint Resolution Agreement, plaintiff wanted his complaint reinstated, arguing that the agreement was not being honored. (Ex. J–14). Around Decem-

ber 12, 1989, following the agreement, Johnson was offered a 30-day detail in maintenance, which he refused (Sturman Decl., ¶ 10). In a letter dated December 14, 1989, plaintiff wrote that he refused the offer because he felt it was not a "positive solution." (Ex. J–15).

Kelly, the Postmaster of the New York Division of the Postal Services, in a letter dated December 22, 1989 wrote plaintiff that "[I]n an effort to ensure compliance with the stipulated agreement it was verbally offered that you be detailed to the position of Superintendent, Maintenance, EAS–19, for a period of thirty (30) days." (Ex. J–16 in Support of Defendant's Motion for Summary Judgment). However, as noted, plaintiff refused this offer.

After the offer of a detail was refused, plaintiff was laterally reassigned to his current position. Regional Postmaster Kelly notified plaintiff that "it is my decision to remedy the entire situation (denial of the lateral/reassignment and the claimed breach of agreement) by non-competitively awarding you the position of Supervisor, Maintenance, MPE, EAS–16, as well as any training deemed appropriate to ensure your success in your new assignment." (Ex. J–16 in Support of Defendant's Motion for Summary Judgment).

■ Plaintiff has presented no evidence that the agreement was procured via coercion or fraud. Johnson testified, as noted above, that he read the agreement before signing it. There is no evidence that threats were made or that intimidation occurred. (Sturman Dep. of Apr. 8, 1992, 45, 63–64; Collins Dep. at 11–15; Johnson Dep., 225–30). If plaintiff believes that this agreement guaranteed him an immediate promotion (a belief belied by the clear language of the agreement which the record reveals was written by plaintiff), then this was merely a unilateral mistake. A unilateral mistake by the drafter of an agreement does not bind the other party to the agreement, especially where the agreement is relatively clear in its terms. In any event, plaintiff's own testimony indicates that he understood that no promotion was guaranteed. (Johnson Dep. at 243).

Plaintiff contends that his reassignment to his current position breached the agreement, because this was not a higher level position, the position was not posted and plaintiff did not apply for it. Even though he accepted the Level–16 transfer, Johnson filed an appeal on January 3, 1990, arguing that the Postal Service breached the terms of the settlement agreement. (Ex. G–BB).[4] On August 23, 1990, the EEOC ruled that the Agreement was binding and valid and that the terms bargained for by plaintiff had been fully complied with. (Ex. J–21).

■ The EEOC found that Johnson was made whole by the award of his current Level–16 position, even if the Postal Service's failure to promote Johnson to VAN 2343 or VAN 2333 constituted breaches of the settlement agreement. The EEOC determined that when Johnson received his current position, he received all of the relief to which he would have been entitled had he prevailed on the merits of the underlying claim. Plaintiff has presented no credible evidence or controlling case law to convince this court to disagree with the agency determination. A valid agreement settling Johnson's claim bars subsequent litigation on that claim. See, e.g., *Anderson v. Frank*, 755 F.Supp. 187, 189 (E.D.Mich.1991).

Plaintiff argues that federal law bars the interpretation of the agreement in the manner urged by defendant. However, the only case cited by plaintiff that might qualify as controlling in this jurisdiction is the opinion of *Ivinson v. Hutton*, 98 U.S. 79, 25 L.Ed. 66 (1878). This case, which arose in the days when there were separate courts of equity and law, and likely before any of the drafters of Title VII were even born, has absolutely no relevance here. *Ivinson* deals only with the appropriate accounting due upon the dissolution of a partnership to raise cattle. Its relevance to the case at bar is nonexistent.

## D. The Post–Complaint Positions

Plaintiff alleges that he was denied two positions in October and November 1989,

---

4. In his appeal Johnson repeated that the basis of the complaint was his denial of a promotion to

the job labeled VAN 2267 and that he did not intend to pursue other claims. (Ex. J–15).

VAN 2343 and VAN 2333, which he sought before he received his current Level–16 reassignment, as well as two positions awarded in June and October of 1990, VAN 3000, a Level–17 position, and VAN 3031, respectively, which were awarded after this reassignment. For the reasons below, summary judgment dismissing plaintiff's complaint as to the post-complaint positions is granted.

 Plaintiff never requested the assignment or submitted an application for VAN 3000. (Lederman Decl. ¶ 6; Ex. 2). Plaintiff alleges that he did not bother to do so because he felt that defendant's discriminatory practices would render any such application futile. Since he was never denied the position, for whatever reason, he cannot now assert that his failure to get the position was discriminatory. There is thus no cause of action as to this position.

VAN 3031, Supervisor, Maintenance, Detached Units, EAS–16, became vacant on July 23, 1990. (Ex. G–NN). Plaintiff informally requested a lateral transfer to this position (Ex. G–WW) but made this request one month after the announced closing date of the competition for this assignment (Ex. G–NN). Consequently, he was not considered. (Lederman Decl. ¶ 7).

As with the pre-complaint positions, claims charging discrimination were never filed for any of these positions. (Sturman Decl. ¶ 13). Thus, for the same reasons discussed above in the section concerning the pre-complaint positions, plaintiff is barred from suing on the post-complaint positions for failure to invoke, let alone exhaust, his administrative remedies. Plaintiff fails to even assert a plausible reason for failing to do so.

E. Plaintiff's Retaliation Charges

 Plaintiff returned for EEO counseling on April 16, 1991 alleging retaliation by the Postal Service, asserting that his mid-year evaluation of "unacceptable" was reprisal for his final complaints. (Ex. P–81). Plaintiff contends that "[h]e had been literally sent to the suffer (sic) in the Post Office underground purgatory in the darkness of

night for the sin of complaining." (Plaintiff's Summary Judgment Brief at 59).[5]

On October 11, 1991, the EEO issued a final agency decision on this issue, rejecting plaintiff's contention of reprisal on the basis that the mid-year review was merely a progress report that did not result in any adverse action that would give plaintiff standing to complain. (Ex. G–KK in Support of Defendant's Motion for Summary Judgment; Russo Dep. at 28). Plaintiff did not appeal this decision. By the end of the year plaintiff's evaluation was "satisfactory." (Ex. J–116 in Support of Defendant's Motion for Summary Judgment).

"To make out a prima facie case of retaliation, an employee must show that the employee was engaged in protected activity; that the employer was aware of that activity; that the employee suffered adverse employment decisions, and that there was a causal connection between the protected activity and the adverse employment action." *Manoharan v. Columbia Univ. College of Phys. & Surgeons*, 842 F.2d 590, 593 (2d Cir.1988). In order to escape summary judgment plaintiff must present some evidence that presents a material question of fact as to each element of this claim. Thus plaintiff's claim fails for there is no evidence of any adverse employment action.

 "A prima facie case cannot be established by a plaintiff who cannot show that he was the victim of an adverse personnel decision." *McGuire v. United States Postal Service*, 749 F.Supp. 1275, 1282 (S.D.N.Y.1990). An adverse action is one that affects the "terms, privileges, duration or condition of the plaintiff's employment." (*Id.*, citing *Rooney v. Witco Corp.*, 722 F.Supp. 1040, 1046 (S.D.N.Y.1989). Since the mid-year evaluation did not affect the terms, privileges, duration or condition of Johnson's employment (See Ex. G–KK to Defendant's Memorandum) and there is no evidence to the contrary, the retaliation complaint should be dismissed by summary judgment.

More importantly, Johnson's own testimony indicates that any negative evaluations

---

**5.** It is assumed that the Post Office does not actually have a subterranean link to the nether- world, and that plaintiff merely misused "literally" when in actuality he meant "metaphorically."

received were not the effect of any discriminatory intent on the part of the evaluators. They were instead due to the difficulties plaintiff experienced in familiarizing himself with his current position. (Certification of Plaintiff, ¶¶ 51–53).

## IV. CONCLUSION

For the reasons stated above, defendant's motion for summary judgment is granted. The action is dismissed.